HARRIS L. COHEN, ESQ. #119600
HARRIS L. COHEN, A PROF. CORP.
5305 Andasol Ave.
Encino, CA 91316
Tel 818-905-5599 / Fax 818-905-5660
Email: hcohen00@aol.com

Attorneys for Secured Creditors,
BRC Commercial Bridge Fund, LLC and Bellaire
Commercial Investments, LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE<br><br>TIFFANI ZELAYA,<br><br><br>        DEBTOR.<br><br>_____ | CASE NO.  6:23-bk-11933-SY<br>Chapter 13<br><br>**BRC COMMERCIAL BRIDGE FUND, LLC'S AND BELLAIRE COMMERCIAL INVESTMENTS, LLC'S OBJECTION TO CONFIRMATION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF GEORGE LINTZ**<br><br>**341(a) meeting:** Date: 6/14/2023: Time: 9:00 a.m.<br><br>**Confirmation Hearing**<br>Date: 7/25/2023<br>Time: 1:30 p.m.<br>Courtroom: 302 |

        Former Secured Creditor, BRC Commercial Bridge Fund, LLC and Bellaire

Commercial Investments, LLC and now property owner (collectively "Creditors") object

to confirmation of Debtor, Tiffani Zelaya's, Chapter 13 plan as follows:

## I.    STATEMENT OF FACTS.

1.    The Debtor, Tiffani Zelaya's, primary residence was 5041 Violas Court, Jurupa Valley, CA 91752 (the "Property"). (Petition page 2).  Debtor does not own the Property.  It was transferred by Creditors' borrower, Jarrell Darnell Davis to Huskies Properties Trust 2020 in 2021 and was believed to be owned by that trust through the foreclosure sale of the Property on June 6, 2023.  Therefore, Debtor lacks standing to modify Creditors' debt as the debt was satisfied by the foreclosure sale.

2.    This case was dismissed by the Court on May 26, 2023, and notice of the dismissal was mailed to all creditors.

3.    After the case was dismissed, Creditors completed the foreclosure sale.

4.    As the debt to creditors is no longer outstanding it is not subject to modification by Debtor's plan.

## II.    DEBTOR LACKS STANDING TO MODIFY CREDITORS' DEBT.

As stated above, Debtor did and does not own the Property.  It is owned by Creditors now and was previously owned by Huskies Properties Trust 2020.  Therefore, Debtor lacks standing to modify any aspect of the debt or ownership of the Property.

## III.    DEBTOR'S CHAPTER 13 PLAN CANNOT BE CONFIRMED AS PROPOSED.

The provisions of 11 United States Code §1325 set forth the requirements for the Court to confirm a Chapter 13 Plan. The burden is on the debtor to demonstrate that the plan meets the conditions essential for confirmation. *Warren v. Fidelity & Casualty Co.*

*of N.Y. (In re Warren)*, 89 B.R. 87, 93 (9th Cir. BAP 1988). For the reasons detailed herein, the Debtor fails to meet this burden.

The requirement that a debtor provide for the full value of a creditor's secured claim is mandatory for plan confirmation. *See Barnes v. Barnes*, 32 F.3d 405, 407 (9th Cir. 1994); *see also In re Lucas*, 3 B.R. 252, 253 (Bankr. S.D. Cal. 1980) ("In order to confirm any Chapter 13 Plan, the court must be satisfied…that the plan meets all the requirements of § 1325(a)."). The burden lies with the debtor in demonstrating compliance with section 1325(a). *Chinichian v. Campolongo*, 784 F.2d 1440 (9th Cir. 1986).

As stated above, even if the Debtor had standing, the plan could not propose to pay Creditors as the debt was satisfied by the foreclosure sale.

## IV. THE DEBTOR'S PLAN ALSO WAS NOT CONFIRMABLE AS IT MAY NOT MODIFY THE CREDITORS' LOAN TO 0.00% INTEREST BASED ON 11 U.S.C. §1322(b)(2).

The Debtor lists the Property that secured Creditors' loan as her principal residence in her petition, however she does not own it and lacks standing to modify Creditors' loan. Section 1322(b)(2) provides that a chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims."

Here the Debtor's petition discloses that the property that secures Creditors' loan at 5041 Violas Court, Jurupa Valley, CA 91752, is her principal residence.

**BRC'S AND BELLAIRE'S OBJECTION TO CONFIRMATION; MEMORANDUM OF POINTS
AND AUTHORITIES**            Page 3

Therefore, she may not modify the rights of the holder and cannot extend the maturity date beyond the plan payments period.  *In re Rubottom*, 134 B.R. 641, 645 (9th Cir. BAP 1991) ("This case involves the impermissible modification of a right to payment on a note that matured *during the plan period*.")(Emphasis in original), see also *In re Reeves,* 164 B.R. 766, 767-768 (9th Cir. BAP 1994).

## V.    THIS CASE WAS FILED IN BAD FAITH.

One of the requirements for confirmation is that the plan has been proposed in good faith.  11 U.S.C. §1125(a)(3) ("(3)the plan has been proposed in good faith and not by any means forbidden by law;").  In determining bad faith the Court will review the "totality of the circumstances."  *In re Eisen*, 14 F.3d 469, 470.

Here, the plan proposed to only pay $117,000 of the over $726,000 of fully matured debt.  That is bad faith.  Therefore, even if the plan had the full debt in it, on its face the plan would be non-confirmable based on the Debtor's inadequate income and alleged family contributions.

Based on the foregoing, the Court should find the case was filed in bad faith and the plan should not be confirmed.

## VI.    CONCLUSION.

The Plan is not confirmable for several reasons including: 1. The Debtor's lack of standing to modify the Creditors' debt; 2. Failure to pay gap interest and fees; 3. Failure to pay the required rate of interest on Creditors' claim; 4. Failure to include the entire Creditors' claim which was fully matured pre-petition; 5. Inability to fund the plan to pay the gap interest and fees and Creditors' claim in full in equal payments during the

plan term; and 6. Bad faith filing as the Debtor never had sufficient funds for a plan and that was known prior to the filing.

HARRIS L. COHEN, A PROF. CORP.

By: _____
      Harris L. Cohen, Esq.
      Attorney for Creditors

### DECLARATION OF GEORGE LINTZ

I, George Lintz, hereby declare and state:

I am over the age of 18 and have personal knowledge as to all facts set forth herein and if called upon to testify thereto I would and would competently do so.

1.      I am the manager of both BRC Commercial Bridge Fund, LLC and Bellaire Commercial Investments, LLC ("Creditors").

2.      This case concerns the Debtor's, Tiffani Zelaya, alleged primary residence at is 5041 Violas Court, Jurupa Valley, CA 91752 (the "Property").  The Debtor filed this chapter 13 case on May 8, 2023.

3.      Attached hereto as Exhibit "1" is a true and correct copy of notice of dismissal of this case from the Clerk of the Court.

4.      Attached hereto as Exhibit "2" is a true and correct copy of the trustee's deed upon sale from the sale of the Property at the foreclosure sale on June 6, 2023.

5.      Attached hereto as Exhibit "3" is a true and correct copy of the Creditor's proof of claim filed in this case with the documents supporting its claim such as the note and deed of trust.  The Debtor was not the Creditors' borrower.  The Debtor does not hold title and has not established her interest in the Property.  The Creditors note was fully matured prior to this bankruptcy case.  The Creditors' amount owed, as of the filing date, was $726,505.05.  However, since then the Property was foreclosed upon as indicated in Exhibit "2."

6.      As of the petition date, the Property was owned by Huskies Properties Trust 2020, which is not the Debtor.  A true and correct copy of the grant deed from Jarrell

Darnell Davis to Huskies Properties Trust 2020 recorded on December 14, 2021, is attached hereto as Exhibit "2."

7.      Attached hereto as Exhibit "4" is a true and correct copy of the Debtor's petition page showing her primary residence.

8.      Attached hereto as Exhibit "5" is a true and correct copy of the Debtor's schedules "I" and "J."

9.      Attached hereto as Exhibit "6" is a true and correct copy of the Debtor's chapter 13 plan.

10.     I have been in the lending business for over 10 years.

11.     I have reviewed the proposed reorganization plan for the Debtor.  The plan provides that Creditors' debt is only $117,000 and will be paid with 0.00% interest over 60 months with monthly payments of $1,950.  However, the fully matured debt was not $117,000, but was $726,505.05

12.     I have reviewed the Debtor's Bankruptcy Schedules I and J.  Schedule I shows less than $1,000 of social security income and the remainder as alleged contributions from the Debtor's children.  It also shows less than was required to pay Creditors in full over 60 months even at the prime rate plus 2%.

13.     The national prime rate increased to 8.00% on March 23, 2023 and then to 8.25% on May 4, 2023.  I have confirmed this with the online publication of these figures by the Wall Street Journal and JP Morgan Chase publications.

The Debtor valued the Property at $900,000 and it had less than a 20% gross equity cushion with that number (726/900).  The likelihood of default under the proposed plan

**BRC'S AND BELLAIRE'S OBJECTION TO CONFIRMATION; MEMORANDUM OF POINTS AND AUTHORITIES**

was 100% since the Debtor's Schedule "I" shows less gross income than the payment required to be paid to Creditors at the national prime rate plus 2% which would require a monthly payment over 60 months of **$15,525.60** (excel =pmt(.1025/12,60,-726505.05)). If the rate set were the national prime rate plus 3% the monthly payment would be **$15,886.71** (excel =pmt(.1125/12,60,-726505.05)). This is in addition to the gap interest and fees accruing during the period between the filing date and the confirmation date. This is 78 days of interest.  At the contract rate interest on the principal and fees which are $616,254 ($611,250 + $3,203.97 + $1,800), the amount required to have been paid is $12,510.80 plus approximately an estimated $3,000 in attorneys fees which total $15,510.80.

14.    In this case the interest rate would have been increased by 200 basis points to adjust for the risk of default which based on the Debtor's own numbers in Schedule "I" would be 100%.  This is based on my analysis of the Debtor's schedules, the lack of income earned by the Debtor and lack of sufficient family contributions, which assumes they are bona fide and verifiable that is subject to the Debtor's proof.

15.    In this case the interest rate would have been increased by an additional 100 basis points to adjust for the duration and feasibility of the reorganization plan.  The Creditors' note has already matured by its own terms on June 1, 2022.  To increase the maturity by 60 months increases risks to the lenders and makes the loans much less attractive.  Further, the loan was a 1 year loan, and this proposed 5 year loan would have addede significant risk the lender never agreed to.  Therefore, I believe that the appropriate

**BRC'S AND BELLAIRE'S OBJECTION TO CONFIRMATION; MEMORANDUM OF POINTS AND AUTHORITIES**

interest rate would be 11.25%

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct. Executed at San Jose.

Dated: July 12, 2023

_____

George Lintz

**BRC'S AND BELLAIRE'S OBJECTION TO CONFIRMATION; MEMORANDUM OF POINTS AND AUTHORITIES**                    Page 9

# EXHIBIT "1"

Form odspb–odspab/autodismi
Rev. 06/2017

# United States Bankruptcy Court
## Central District of California

**3420 Twelfth Street, Riverside, CA 92501–3819**

## ORDER AND NOTICE OF DISMISSAL FOR
## FAILURE TO FILE SCHEDULES, STATEMENTS AND/OR PLAN

**DEBTOR INFORMATION:**                          **BANKRUPTCY NO.** 6:23–bk–11933–SY
Tiffani Zelaya
                                                 **CHAPTER** 13
**Last four digits of Social–Security or Individual Taxpayer–Identification (ITIN) No(s)., (if any):** xxx–xx–0314
**Employer Tax–Identification (EIN) No(s).(if any):** N/A
**Debtor Dismissal Date:** 5/26/23

**Address:**
5041 Violas Ct
Jurupa Valley, CA 91752–5000

It appearing that the debtor(s) in the above–captioned case has failed to file all the documents required under FRBP 1007 or 3015(b) within 14 days after the filing of the petition and no motion for an order extending the time to file the required documents has been timely filed in accordance with FRBP 1007(a)(5) or 3015(b),

IT IS HEREBY ORDERED THAT:

1)    The case is dismissed.

2)    The automatic stay is vacated.

3)    Any discharge entered in this case is vacated.

4)    The Court retains jurisdiction on all issues involving sanctions, any bar against being a debtor in bankruptcy, all issues arising under Bankruptcy Code §§ 105, 109(g), 110, 329, 349, and 362, and to any additional extent provided by law.

By the Court,

Dated: May 26, 2023

**Kathleen J. Campbell**
Clerk of Court

Form odspb–odspab/autodismi Rev. 06/2017                                    **16 / AUTU**

# EXHIBIT "2"

**DOC # 2023-0180740**
06/23/2023 02:33 PM Fees: $105.00
Page 1 of 3
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

RECORDING REQUESTED BY:
**PACIFIC COAST TITLE COMPANY**

AND WHEN RECORDED TO:
**BRC COMMERCIAL BRIDGE FUND LLC
AND BELLAIRE COMMERCIAL
INVESTMENTS LLC
1617 S PACIFIC COAST HIGHWAY, STE C
REDONDO BEACH, CA 90277**

\*\*This document was electronically submitted
to the County of Riverside for recording\*\*
Receipted by: CRISTINA #7700

**Forward Tax Statements to
the address given above**

---

SPACE ABOVE LINE FOR RECORDER'S USE

TS #: **302A-019454**
Order #: **91225058**
Property Address: **5041 VIOLAS COURT, JURUPA VALLEY, CA 91752**

## TRUSTEE'S DEED UPON SALE

A.P.N.: **160-281-034**
The Grantee Herein **was** the Foreclosing Beneficiary.
The Amount of the Unpaid Debt together with costs was **$738,103.20**
The Amount Paid by the Grantee at the trustee sale was **$738,103.20**
Said Property is in the City of JURUPA VALLEY, County of **Riverside**
Transfer Tax: **$0.00**

THIS TRANSACTION IS EXEMPT FROM THE REQUIREMENTS OF THE REVENUE AND
TAXATION CODE, SECTION 480.3

**PLM LOAN MANAGEMENT SERVICES, INC.,** as Trustee, (whereas so designated in the Deed
of Trust hereunder more particularly described or as duly appointed Trustee) does hereby
**GRANT** and **CONVEY** to **BRC COMMERCIAL BRIDGE FUND LLC AND BELLAIRE
COMMERCIAL INVESTMENTS LLC** (herein called Grantee) but without covenant or warranty,
expressed or implied, all right title and interest conveyed to and now held by it as Trustee under
the Deed of Trust in and to the certain real property situated in the County of **Riverside**, State of
California, described as follows:

**SEE EXHIBIT "A" FOR LEGAL DESCRIPTION**

This conveyance is made in compliance with the terms and provisions of the Deed of Trust
executed by **J.D. DAVIS AKA JARRELL DARNELL DAVIS, A SINGLE MAN** as Trustor, dated
**5/28/2021** recorded on **6/4/2021, as Instrument No. 2021-0342618,** of the Official Records in
the Office of the Recorder of **Riverside**, California under the authority and powers vested in the
Trustee designated in the Deed of Trust or as the duly appointed Trustee, default having
occurred under the Deed of Trust pursuant to the Notice of Default and Election to Sell which
was recorded in the Office of the Recorder of said County, and such default still existed at the
time of sale.

Trustee having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten business days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person entitled to notice in compliance with California Civil Code 2924b.

All requirements per California Statutes regarding the mailing, personal delivery of copies of Notice of Default and Election to Sell under Deed of Trust and the publication and posting of copies of Notice of Trustee's Sale have been complied with. Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on **6/6/2023**. Grantee, being the highest bidder of the Trustee's Sale, pursuant to California Civil Code Section 2924h or 2924m, became the purchaser of said property for the amount bid, being **$738,103.20**, in lawful money of the United States or by credit bid if the Grantee was the beneficiary of said Deed of Trust at the time of the Trustee's Sale. Receipt thereof is hereby acknowledged as to full or partial satisfaction of the debt secured by said Deed of Trust at the time of Trustee's Sale.

If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the purchase price paid. The Purchaser shall have no further recourse against the Trustee, Mortgagor, Mortgagee, or the Mortgagee's Attorney.

In witness thereof, **PLM LOAN MANAGEMENT SERVICES, INC.**, as Trustee, has this day, caused its name to be hereunto affixed by its officer thereunto duly authorized by its corporation by-laws.

Date: **6/21/2023**                    **PLM LOAN MANAGEMENT SERVICES, INC.**

By: _____

Elizabeth A. Godbey, Vice President

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF California
COUNTY OF Santa Clara

On 6/21/2023 before me, CHENOA LYNN DODDS, a Notary Public personally appeared, Elizabeth A. Godbey who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Name                                (Seal)

CHENOA LYNN DODDS
Notary Public - California
Santa Cruz County
Commission # 2290550
My Comm. Expires Jun 27, 20

CHENOA LYNN DODDS
Notary Public - California
Santa Cruz County
Commission # 2290550
My Comm. Expires Jun 27, 2023

## EXHIBIT A

### LEGAL DESCRIPTION

THE LAND REFERRED TO IN THIS GUARANTEE IS SITUATED IN THE STATE OF **CALIFORNIA**, COUNTY OF **RIVERSIDE**, AND IS DESCRIBED AS FOLLOWS:

**PARCEL NO. 1**

**LOT 6 (THE "PROPERTY") OF TRACT NO. 31768, IN THE CITY OF JURUPA VALLEY, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN ON THE SUBDIVISION MAP FILED ON APRIL 3, 2014, IN BOOK 440, PAGES 79 TO 89, INCLUSIVE, OF MAPS, IN THE OFFICE OF THE RIVERSIDE COUNTY RECORDER, AND CERTIFICATE OF CORRECTION RECORDED AUGUST 13, 2014, AS INSTRUMENT NO. 2014-0307639, OF OFFICIAL RECORDS.**

**EXCEPTING THEREFROM, ONE-HALF INTEREST IN AND TO ALL OIL, GAS, PETROLEUM, NAPTHA, OTHER HYDROCARBON SUBSTANCES AND MINERALS OF WHATSOEVER KIND AND NATURE AS RESERVED TO THE FEDERAL LAND BANK OF BERKELEY, A CORPORATION, BY DEED RECORDED SEPTEMBER 1, 1950, IN BOOK 1201, PAGE 398 OF OFFICIAL RECORDS.**

**ALSO EXCEPTING THEREFROM, FOR THE BENEFIT OF GRANTOR, ITS SUCCESSORS IN INTEREST AND ASSIGNEES, TO THE EXTENT NOT ALREADY EXCEPTED OR RESERVED BY INSTRUMENT OF RECORD:**

**A. ALL OIL RIGHTS, MINERAL RIGHTS, NATURAL GAS RIGHTS AND RIGHTS TO ALL OTHER HYDROCARBONS BY WHATSOEVER NAME KNOWN, TO ALL GEOTHERMAL HEAT AND TO ALL PRODUCTS DERIVED FROM ANY OF THE FOREGOING (COLLECTIVELY, "SUBSURFACE RESOURCES");**

**B. THE PERPETUAL RIGHT TO DRILL, MINE, EXPLORE AND OPERATE FOR AND TO PRODUCE, STORE AND REMOVE ANY OF THE SUBSURFACE RESOURCES ON OR FROM THE LOT, INCLUDING THE RIGHT TO WHIPSTOCK OR DIRECTIONALLY DRILL AND MINE FROM LANDS OTHER THAN THE LOT, WELLS, TUNNELS AND SHAFTS INTO, THROUGH OR ACROSS THE SUBSURFACE OF THE LOT, AND TO BOTTOM SUCH WHIPSTOCKED OR DIRECTIONALLY DRILLED WELLS, TUNNELS AND SHAFTS WITHIN OR BEYOND THE EXTERIOR LIMITS OF THE LOT, AND TO REDRILL, RETUNNEL, EQUIP, MAINTAIN, REPAIR, DEEPEN AND OPERATE ANY SUCH WELLS OR MINES, BUT WITHOUT THE RIGHT TO DRILL, MINE, EXPLORE, OPERATE, PRODUCE, STORE OR REMOVE ANY OF THE SUBSURFACE RESOURCES THROUGH OR IN THE SURFACE OR THE UPPER FIVE HUNDRED FEET (500') OF THE SUBSURFACE OF THE LOT; AND**

**PARCEL NO. 2**

**NONEXCLUSIVE EASEMENTS APPURTENANT TO THE LOT FOR ACCESS, INGRESS, EGRESS, MAINTENANCE, REPAIR, DRAINAGE, ENCROACHMENT, SUPPORT, USE, ENJOYMENT AND FOR ALL OTHER PURPOSES, AS DESCRIBED IN THE AMENDED AND FULLY RESTATED DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND RESERVATION OF EASEMENTS FOR TURNLEAF, RECORDED ON OCTOBER 9, 2014, AS INSTRUMENT NO. 2014-0385862, AS AMENDED BY A FIRST AMENDMENT THERETO, RECORDED ON OCTOBER 22, 2014, AS INSTRUMENT NO. 2014-0400177 (TOGETHER WITH ANY ADDITIONAL AMENDMENTS THERETO, COLLECTIVELY THE "DECLARATION"), AND THE SUPPLEMENTAL DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND NOTICE OF ADDITION OF TERRITORY FOR TURNLEAF (PHASE 5), (TOGETHER WITH ANY AMENDMENTS THERETO, COLLECTIVELY THE "NOTICE OF ADDITION"), RECORDED ON SEPTEMBER 14, 2017, AS INSTRUMENT NO. 2017-0382276, ALL OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA (THE "OFFICIAL RECORDS").**

**Assessor's Parcel Number: 160-281-034**

# EXHIBIT "3"

Fill in this information to identify the case:

| | |
|---|---|
| Debtor 1 | TIFFANY ZELAYA |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 6:23-bk-11933-SY |

## Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1:  Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | BRC Commercial Bridge Fund, LLC and Bellaire Commercial Investments, LLC<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor |
| 2. Has this claim been acquired from someone else? | ☑ No<br>☐ Yes.  From whom? |

3. **Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| George Lintz, c/o Bellaire Commercial Inv.<br>Name | Name |
| 1617 S. Pacific Coast Hwy, Suite C<br>Number     Street | Number     Street |
| Redondo Beach     CA     90277<br>City          State     ZIP Code | City          State     ZIP Code |
| Contact phone 213-226-8705 | Contact phone |
| Contact email george.lintz@bellairepartners.com, | Contact email |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

| | |
|---|---|
| 4. Does this claim amend one already filed? | ☑ No<br>☐ Yes.  Claim number on court claims registry (if known) _____     Filed on ____ / ____ / ____<br>                                                                MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes.  Who made the earlier filing? |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

**7. How much is the claim?**

$ _____726,505.05_. Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

loan secured by 5041 Violas Ct., Jurupa Valley, CA 91752

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

Nature of property:

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

Basis for perfection: ____deed of trust_____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $ ___953,500.00_ per zillow.com

Amount of the claim that is secured: $ ___726,505.05_

Amount of the claim that is unsecured: $ _____0.00_ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $ _____

Annual Interest Rate (when case was filed) _____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition. $ _____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

**Part 3:   Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   05/22/2023
                   MM / DD / YYYY

*George Lintz* (signature)

Signature

**Print the name of the person who is completing and signing this claim:**

| Name | George Lintz | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Manager | | |
| Company | Bellaire Commercial Investments, LLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 1617 S. Pacific Coast Hwy, Suite C | | |
| | Number          Street | | |
| | Redondo Beach | CA | 90277 |
| | City | State | ZIP Code |
| Contact phone | 213-226-8705 | Email george.lintz@bellairepartners.com, | |

## Mortgage Proof of Claim Attachment

(12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

| Part 1: Mortgage and Case Information | Part 2: Total Debt Calculation | Part 3: Arrearage as of Date of the Petition | Part 4: Monthly Mortgage Payment |
|---|---|---|---|
| Case number: 6:23-bk-11933-SY | Principal balance: 611,250 | Principal & interest due: 721,501.08 | Principal & interest: _____ |
| Debtor 1: Tiffani Zelaya | Interest due: 110,251.08 | Prepetition fees due: 3,203.97 | Monthly escrow: _____ |
| Debtor 2: | Fees, costs due: 3,203.97 | Escrow deficiency for funds advanced: 1,800.00 | Private mortgage insurance: _____ |
| Last 4 digits to identify: __ __ __ __ | Escrow deficiency for funds advanced: 1,800 | Projected escrow shortage: _____ | Total monthly payment: _____ |
| Creditor: BRC Commercial Bridge Fund, LLC and Bellaire Commercial | Less total funds on hand: − _____ | Less funds on hand: − _____ | loan fully matured by its |
| Servicer: Investments LLC | Total debt: 726,505.05 | Total prepetition arrearage: 726,505.05 | terms pre-petition |
| Fixed accrual/daily simple interest/other: 9.5 non default rate | | | |

**Part 5 : Loan Payment History from First Date of Default**

| A. Date | B. Contractual payment amount | Account Activity | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| | | | | LOAN FULLY MATURED | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |

| | LOAN CALCULATIONS | | | | |
| | | | | | |
| | INTEREST TO FILING DATE 5/8/2023 | | | | |
| | | | | | |
| $ 611,250.00 | principal | | $ 721,501.08 | principal and interest |
| $ 110,251.08 | interest | | $ 3,203.97 | trustee fee |
| $ 3,203.97 | trustee fee | | $ 1,800.00 | insurance policy |
| $ 1,800.00 | insurance policy | | $ 726,505.05 | total |
| $ 726,505.05 | total | | | |

**PROMISSORY NOTE**
(Business Purpose Loan)

$611,250.00
Loan # 21-91752A

May 28, 2021

       **FOR VALUE RECEIVED**, the undersigned, J.D. Davis AKA Jarrell Darnell Davis, a single man ("**Maker**"), whose address for purposes of this Promissory Note (this "**Note**") is 4434 ½ Victoria Park Pl, Los Angeles, CA 90019 (the State of California is referred to as the "**State**"), PROMISES TO PAY to the order of BRC Commercial Bridge Fund, LLC and Bellaire Commercial Investments LLC ("**Holder**"), at 1617 S Pacific Coast Hwy, Ste C, Redondo Beach, CA 90277, or such other place as the Holder may specify, the principal sum of Six Hundred Eleven Thousand Two Hundred Fifty only in US Dollars ($611,250.00), together with interest thereon from the Date of Disbursement (as defined below) at the rate of 9.5 Percent (9.5%) per annum (the "**Contract Rate**"), to be paid in lawful money of the United States of America as follows:

    a.    Interest from the Date of Disbursement through the end of the month shall be due and payable on the Date of Disbursement; and,

    b.    The payments on this Note shall be as follows:

| Number of Payments | Amount of Payment | Date Series Commences "Date of Commencement" |
|---|---|---|
| 1 – 12 | $4,839.06 | 7/1/2021 - 6/1/2022 (all payments impounded) |
| 13 | $611,250.00 | 6/1/2022 |

    The day of the month on which payments are due is called the "**Installment Payment Date.**" The last day in the last series above is called the "**Date of Maturity.**" Each installment payment shall be applied first to accrued interest and then to principal.

    1.    The "**Date of Disbursement**" for purposes of this Note shall mean the day upon which a closing agent disburses the majority of the principal amount of this Note.

    2.    A "**Loan Month**" for purposes of this Note shall mean each successive calendar month of the term of this Note, beginning with the month in which the Date of Commencement falls.

    3.    If any installment of principal and/or interest not be paid within five only (5) Days after the due date ("**Grace Period Expiration Date**", Maker shall also pay to Holder a late charge of (10.0%) of such installment. THE LATE CHARGE SHALL BE PAID WITHOUT PREJUDICE TO THE RIGHT OF THE HOLDER TO COLLECT ANY OTHER AMOUNTS PROVIDED TO BE PAID OR TO DECLARE A DEFAULT UNDER THIS NOTE OR THE DEED OF TRUST (AS DEFINED BELOW). THE LATE CHARGE SHALL BE PAYABLE NOT LATER THAN THE DUE DATE OF THE NEXT PAYMENT AND SHALL BE SECURED BY THE DEED OF TRUST AND OTHER SECURITY DOCUMENTS (AS DEFINED BELOW). MAKER RECOGNIZES THAT ITS DEFAULT IN MAKING ANY PAYMENT AS AGREED TO BE PAID WHEN DUE, OR THE OCCURRENCE OF ANY OTHER EVENT OF DEFAULT UNDER THE DEED OF TRUST OR ANY OTHER SECURITY DOCUMENT, WILL REQUIRE HOLDER TO INCUR ADDITIONAL EXPENSE IN SERVICING AND ADMINISTERING THE LOAN, IN LOSS TO HOLDER OF THE USE OF THE MONEY DUE

COMMERCIAL NOTE
Version 2/15/04 - Copyright, Doss & Page, Lawyers

1

AND IN FRUSTRATION TO HOLDER IN MEETING ITS OTHER FINANCIAL AND LOAN COMMITMENTS AND THAT THE DAMAGES CAUSED THEREBY WOULD BE EXTREMELY DIFFICULT AND IMPRACTICAL TO ASCERTAIN. MAKER AGREES (A) THAT AN AMOUNT EQUAL TO THE LATE CHARGE PLUS THE ACCRUAL OF INTEREST AT THE DEFAULT RATE IS A REASONABLE ESTIMATE OF THE DAMAGE TO HOLDER CAUSED BY A LATE PAYMENT, AND (B) THAT THE ACCRUAL OF INTEREST AT THE DEFAULT RATE FOLLOWING ANY OTHER EVENT OF DEFAULT IS A REASONABLE ESTIMATE OF THE DAMAGE TO HOLDER CAUSED BY ANOTHER EVENT OF DEFAULT, REGARDLESS OF WHETHER THERE HAS BEEN AN ACCELERATION OF THE DEBT. NOTHING IN THIS NOTE SHALL BE CONSTRUED AS AN OBLIGATION ON THE PART OF HOLDER TO ACCEPT, AT ANY TIME, LESS THAN THE FULL AMOUNT THEN DUE, OR AS A WAIVER OR LIMITATION OF HOLDER'S RIGHT TO COMPEL PROMPT PERFORMANCE.

INITIAL:

4.    No Prepayment Penalty. Maker may prepay the loan at any time prior to maturity.

5.    If an Event of Default and the Holder accelerates payment of the indebtedness, the Holder shall suffer damages and opportunity costs which are now difficult or impossible to ascertain. Therefore, if that occurs, Maker shall pay to the Holder, as liquidated damages and not as a penalty, and in addition to the entire balance of principal and accrued interest and all other sums then due under this Note, the Deed of Trust and the Other Security Documents, an amount equal to the Prepayment Premium computed as if the entire unpaid balance of this Note were prepaid on the date of default.

The Maker waives all rights under California Civil Code Section 2954.10 which provides, in part, as follows:

AN OBLIGEE WHICH ACCELERATES THE MATURITY DATE OF THE PRINCIPAL AND ACCRUED INTEREST, PURSUANT TO CONTRACT, ON ANY LOAN SECURED BY A MORTGAGE OR DEED OF TRUST ON REAL PROPERTY UPON THE CONVEYANCE OF ANY RIGHT, TITLE, OR INTEREST IN THAT PROPERTY, MAY NOT CLAIM, EXACT, OR COLLECT ANY CHARGE, FEE, OR PENALTY FOR ANY PREPAYMENT RESULTING FROM THAT ACCELERATION.

The Maker understands and acknowledges that the Holder bargained for this waiver as part of the consideration that induced the Holder to enter into this transaction. The Maker initials this paragraph for the purpose of evidencing its understanding of Civil Code Section 2954.10 recited in part above and the Maker's agreement to the waiver of its terms.

INITIAL:

6.    This Note is secured, without limitation, by that certain Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Financing Statement (the **"Deed of Trust"**) of the same date given by Maker to PLM Loan Management, Inc., as Trustee, for the benefit of Holder, on certain real estate and personal property (the **"Trust Property"**) and the Other Security Documents (as defined in the Deed of Trust, referred to as the **"Other Security Documents"**). This Promissory Note is the Note referred to in, and is entitled to the benefits of, the Deed of Trust and the Other Security Documents. Among the provisions of the Deed of Trust is the following paragraph 12:

12. Transfer or Encumbrances of the Trust Property. Trustor acknowledges that Beneficiary has examined both the creditworthiness of Trustor and Trustor's experience in owning and operating properties such as the Trust Property in determining whether or not to make the Loan, that Beneficiary has relied on Trustor's creditworthiness and experience in deciding to make the Loan, and that Beneficiary will continue to rely on Trustor's ownership of the Trust Property as

COMMERCIAL NOTE                                          2
Version 2/15/04 - Copyright, Doss & Page, Lawyers

a means of maintaining the value of the Trust Property as security for repayment of the Debt. Trustor acknowledges that Beneficiary has a valid interest in maintaining the value of the Trust Property so as to ensure that, if Trustor defaults in the repayment of the Debt, Beneficiary can recover the Debt by a sale of the Trust Property. If Trustor shall, without the prior written consent of Beneficiary, further encumber the Trust Property with any lien imposed in connection with any other financing, or sell, transfer or convey any part of the Trust Property or the right to manage or control the operation of any part of the Trust Property, the entire Debt shall become due, at the option of Beneficiary. A sale, transfer or conveyance within the meaning of this Paragraph shall be deemed to include (i) an installment sales agreement in which Trustor agrees to sell any part of the Trust Property for a price to be paid in installments; (ii) an agreement by Trustor leasing all or a substantial part of the Trust Property, or a sale, pledge, assignment or other transfer of, or the grant of a security interest in, Trustor's right, title and interest in any Leases or any Rents; (iii) if Trustor is a corporation or a limited partnership with a corporate general partner, the transfer of stock of the Trustor or its corporate general partner to parties who do not now hold a controlling interest; (iv) if Trustor is a general or limited partnership, joint venture, or other form of partnership (a "**Partnership**"), a transfer of any general partnership interest or the admission of any new general partner; and (v) if Trustor is a limited liability company or a limited partnership with a limited liability company as general partner, the transfer of membership interests in the Trustor or its limited liability company general partner (or the stock or membership interests in any corporation or limited liability company controlling Trustor or its limited liability company general partner) or the creation or issuance of new memberships in Trustor or its limited liability company general partner to parties who do not now own a controlling interest. Beneficiary reserves the right to condition its consent upon a modification of the terms of this Deed of Trust and the Note and on assumption of this Deed of Trust as so modified, by the proposed transferee, payment of a transfer or assumption fee, or such other conditions as Beneficiary shall determine in its sole discretion to be in the interest of Beneficiary. Beneficiary shall not be required to demonstrate any actual impairment of its security or any increased risk of default in order to declare the Debt immediately due and payable upon Trustor's sale, transfer, conveyance or further encumbrance of the Trust Property without Beneficiary's consent. This provision shall apply to every sale, transfer, conveyance, or further encumbrance of the Trust Property regardless of whether voluntary or not or whether or not Beneficiary has consented to any previous sale, transfer, conveyance, or further encumbrance of the Trust Property.

     7.    Maker acknowledges that this note and the loan it evidences is a business purpose loan, meaning: (i) Maker is in the business of investing in real estate, (ii), the principal of this loan will be used for a business purposes, and (iii) the Trust Property securing this note will be used for a business purpose and will not be used as an owner-occupied residential property of 1-4 units.

     8. Maker shall be in default under this Note (referred to as an "**Event of Default**") and the whole sum of principal and interest shall become due and payable at the option of the Holder without notice or demand, upon: (i) the nonpayment, by the Grace Period Expiration Date of any installment of principal and/or interest, or any other monetary obligation under this Note, the Deed of Trust or the Other Security Documents; or (ii) any other Event of Default under the Deed of Trust or the Other Security Documents.

     9.    If an Event of Default occurs, this Note shall thereafter bear interest at the rate of the lesser of (i) the Maximum Rate (as hereinafter defined) or (ii) the Contract Rate plus 10 percent % per annum (which lesser rate is referred to as the "**Default Rate**") from the date of the Event of Default.

10. Acceptance by Holder of any payment for less than what is due shall be deemed an acceptance on account only, and the failure to pay the entire amount then due before the Grace Period Expiration Date, shall be and continue to be an Event of Default under this Note. The rights or remedies of the Holder, as provided in this Note, the Deed of Trust or any of the Other Security Documents, or as provided at law or in equity shall be cumulative and concurrent, and may be pursued singly, jointly or successively against the Trust Property, Leases, Rents (as defined in the Deed of Trust) or any other funds, property or security held by Holder for the payment or performance thereof, or against the Maker or otherwise, at the sole discretion of the Holder. The failure to exercise any such right or remedy shall not be construed as a waiver or release of any rights or remedies or of the right to exercise them at any later time.

11. Maker and all endorsers, guarantors, sureties, accommodation parties hereof, and all other persons liable or to become liable for all or any part of the indebtedness under this Note, the Deed of Trust, and the Other Security Documents, waive all applicable exemption rights, whether under the laws of the State, homestead laws, or otherwise, and also waive valuation and appraisement, diligence, presentment, protest and demand, and also notice of protest, of demand, of nonpayment, of dishonor, of acceleration, of intention to accelerate and of maturity. All endorsers, guarantors, sureties, and accommodation parties hereby consent to any and all renewals, extensions or modifications of the terms hereof, including time for payment. Any such renewals, extensions or modifications may be made without notice to any of said parties.

12. Maker and all endorsers, guarantors, sureties, accommodation parties hereof and all other persons liable or to become liable for all or any part of this indebtedness agree to pay all costs of collection, including reasonable attorneys' fees and all costs of suit, if this Note is not paid when due, or if it is necessary to protect the security for this Note or to commence foreclosure proceedings under the Deed of Trust or any of the Other Security Documents, or if Holder is made a party to any litigation because of this Note, the Deed of Trust or any of the Other Security Documents, whether or not suit is filed, and whether through courts of original jurisdiction, as well as in courts of appellate jurisdiction, or through a bankruptcy court or other legal proceedings. Such costs of collection shall include attorneys fees and costs in all aspects of bankruptcy proceedings affecting the security for this Note or performance hereunder, including plan objection proceedings, objections to discharge, claim objection proceedings, preference actions, relief from stay litigation, motions to dismiss, convert or appoint a trustee, case monitoring and serving on a creditor's committee.

13. This Note shall not be amended, modified or changed, nor shall any waiver of any of its provision be effective unless accomplished by an instrument in writing signed by the party against whom enforcement of any amendment, modification, change or waiver is sought.

14. Maker acknowledges that this Note and the loan it evidences was made by a licensed California Finance Lender or licensed California Real Estate Broker or it was arranged by a licensed California Real Estate Broker and that the broker's participation was a material factor in the consummation of this transaction. However, none of the terms and provisions contained in this Note, the Deed of Trust, or any of the Other Security Documents, shall ever be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate in excess of the Maximum Rate. The Maker or other party now or later liable for the payment of this Note shall never be required to pay interest on this Note at a rate in excess of the Maximum Rate, and the provisions of this paragraph shall control over all other provisions and of any other instrument executed in connection herewith this loan transaction. If Holder collects monies which are deemed to be interest in excess of the Maximum Rate, all excess sums shall be applied against the unpaid principal balance and not to the payment of interest; and if a surplus remains after full payment of principal and lawful interest, the surplus shall be

refunded to the Maker in cash and the Maker hereby agrees to accept such refund. As used in this Note, the term **"Maximum Rate"** means the maximum rate (or, if the context so permits or requires, an amount calculated at such rate) of interest which, at the time in question would not cause the interest charged on the indebtedness evidenced by this Note, the Deed of Trust, or any of the Other Security Documents at such time to exceed the maximum amount which Holder would be allowed to contract for, charge, take, reserve or receive under the laws of the State or any other applicable law after taking into account, to the extent required by the laws of the State or any other applicable law, all relevant payments or charges under this Note, the Deed of Trust, and the Other Security Documents.

15.     Whenever used herein, the words "Maker" and "Holder" shall be deemed to include their respective successors and assigns. In the event Maker is comprised of more than one individual or entity, each such individual or entity shall be jointly and severally liable under this Note.

16.     Time is of the essence of this Note.

17.     Any notice, demand, statement, request, or consent made under this Note shall be in writing and shall be deemed given when hand-delivered or within Three (3) Days after the date sent by certified mail, return receipt requested, or the next business day after the date sent by nationally recognized overnight mail or courier service to the address, as set forth above, of the party to whom such notice is to be given, or to such other address as Maker or Holder, as the case may be, shall in like manner designated in writing.

18.     The singular number shall include the plural, and the plural the singular, and any gender shall be substituted for any other gender, where appropriate.

19.     This Note is to be governed by and construed in accordance with the laws of the State, without giving effect to the conflicts of law provisions thereof. Whenever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Note shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remaining provisions of this Note. Maker consents to the jurisdiction of the state and federal courts in the State for any actions involving the enforcement or interpretation of this Note, Deed of Trust and the transaction they evidence.

20.     MAKER HEREBY WAIVES TRIAL BY JURY IN ANY SUIT INVOLVING THE HOLDER OR ANY ARRANGER OF THIS LOAN AS WELL AS ANY CLAIM FOR PUNITIVE DAMAGES.

21.     THIS NOTE, THE DEED OF TRUST, THE ENVIRONMENTAL INDEMNITY, ANY GUARANTY AND THE OTHER SECURITY DOCUMENTS COLLECTIVELY REPRESENT THE FINAL AGREEMENT AMONG THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS BETWEEN OR AMONG THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN OR AMONG THE PARTIES.

COMMERCIAL NOTE
Version 2/15/04 - Copyright, Doss & Page, Lawyers

5

**IN WITNESS WHEREOF**, the undersigned has executed and delivered this Note effective as of the date first above written.

J.D. Davis AKA Jarrell Darnell Davis, a single man

COMMERCIAL NOTE

6

Version 2/15/04 - Copyright, Doss & Page, Lawyers

Page 1 of 15
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: JACQUELINE #2386

06/04/2021 05:00 PM Fees: $56.00

**RECORDING REQUESTED BY:**
Victoria Gardens Escrow Inc.
Order No. **00795299-993-SV6**
Escrow No. **8406-CG**
Parcel No. **160-281-034**

**AND WHEN RECORDED MAIL TO:**

P.A. WILLIAMS
**2014 W 37TH PL**
**LOS ANGELES CA 90018**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

Deed of Trust
(Please fill in document title(s) on this line)

☒ Exempt from fee per GC27388.1 due to being recorded in connection with concurrent transfer that is subject
to the imposition of documentary transfer tax, or,

☐ Exempt from fee per GC27388.1 due to being recorded in connection with a transfer that was subject to
documentary transfer tax which was paid on document recorded previously on
_____ (date) as document number _____ of Official Records, or,

☐ Exempt from fee per GC27388.1 due to the maximum fees being paid on documents in this transaction, or,

☐ Exempt from fee per GC27388.1 due to the maximum fees having been paid on documents in the transaction(s)
recorded previously on _____ (date) as document number(s)
_____ of Official Records, or

☐ Exempt from fee per GC27388.1 due to being recorded in connection with concurrent transfer that is a
residential dwelling to an owner-occupier, or,

☐ Exempt from fee per GC27388.1 due to it being recorded in connection with a transfer of real property that
is a residential dwelling to an owner-occupier. The recorded document transferring the dwelling to the
owner-occupier was recorded on _____ (date) as document number(s)
_____, or,

☐ Exempt from the fee per GC 27388.1 (a) (1); Not related to real property, or,

☐ Exempt from fee under GC27388.1 for the following reasons:

**THIS PAGE ADDED TO PROVIDE SENATE BILL 2 EXEMPTION INFORMATION**
(Additional recording fee applies)

WHEN RECORDED, RETURN TO:

BRC Commercial Bridge Fund, LLC
1617 S Pacific Coast Hwy, Ste C
Redondo Beach, CA 90277

*APN No 160-281-034 (5041 Violas Ct,91752 )*                     *Above Space for Recorder's Use*

## DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FINANCING STATEMENT

THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH SECTION 9402 OF THE CALIFORNIA COMMERCIAL CODE (THE "**California Commercial Code**")

THIS DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FINANCING STATEMENT ("**Deed of Trust**"), made effective as of May 28, 2021, by J.D. Davis AKA Jarrell Darnell Davis, a single man ("**Trustor**"), whose address for purposes of this Deed of Trust is 4434 ½ Victoria Park Pl, Los Angeles, CA 90019 (the State of California is hereinafter sometimes referred to as the "**State**"); TO AND IN FAVOR OF FCI Lender Services, Inc. ("**Trustee**"); FOR THE BENEFIT OF BRC Commercial Bridge Fund, LLC and Bellaire Commercial Investments LLC (collectively, the "**Beneficiary**"), whose address is 1617 S Pacific Coast Hwy, Ste C, Redondo Beach, CA 90277.

### W I T N E S S E T H :

To secure the payment of a debt described below (the "**Debt**"), Trustor hereby grants, bargains, conveys, transfers, and assigns to Trustee, in trust, WITH POWER OF SALE, all of the real property described in **Exhibit "A"** attached hereto (the "**Premises**") and the buildings, structures, additions, enlargements, lot line adjustment additions, extensions, modifications, repairs and improvements now or hereafter located thereon (the "**Improvements**");

TOGETHER WITH: All right, title, interest and estate of Trustor now owned or hereafter acquired in the following property, rights, interests, and estates (collectively called the "**Trust Property**"):

(a) All easements, rights-of-way, strips of land, streets, alleys, passages, sewer rights, mineral rights, water rights and powers, and all estates, rights, titles, interests, privileges, tenements, hereditaments and appurtenances of any nature, in any way belonging, relating or pertaining to the Premises and the reversion and reversions, remainder and remainders, and all land laying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Premises to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, courtesy and rights of courtesy, property, possession, claim and demand, both in law and in equity, of Trustor in the Premises and every part thereof and all appurtenances thereto;

(b) All machinery, furniture, equipment, fixtures, material, appliances and other articles of personal property of every kind owned by Trustor, or in which Trustor has an interest, located upon the Premises, and appurtenances thereto, and usable for the generation and distribution of air, water, heat, electricity, light, fuel or refrigeration, or for ventilating or air conditioning purposes, or for sanitary or drainage purposes, or for the exclusion of vermin or insects, or for removal of dust, refuse or garbage, and such machinery, furniture, equipment, fixtures and other articles of personal property which consist of all appliances, awnings, window shades, drapery rods, brackets, screens, floor coverings, incinerators and carpeting used in the operation of the Premises and Improvements (and all other personal property, either similar or dissimilar to the foregoing usable in the operation of the Premises and Improvements and located in and on it), together with all replacements and substitutions therefor, now owned or hereafter acquired by Trustor and located in or on said Premises and Improvements, together with all materials intended for construction, reconstruction, alteration, and repair of the Improvements (hereinafter collectively called the "**Equipment**"), together with all condemnation awards and rights under insurance policies and Leases described below pertaining to said Premises or the Improvements now or hereafter located thereon;

(c) All awards or payments, including interest, which may be made as to the Trust Property, whether from the exercise of the right of eminent domain, constructive taking or for any other injury to or decrease in the value of the Trust Property (collectively, "**Awards**");

(d) All leases and other agreements affecting the use, enjoyment or occupancy of the Trust Property, (the "**Leases**"), if any, and all rents and security deposits payable under the Leases, and other deposits, issues and profits from the Trust Property (the "**Rents**");

Page 29

**TO HAVE AND TO HOLD** the Trust Property upon and subject to the trusts and agreements set forth in this Deed of Trust.

      1.     Secured Indebtedness.  This Deed of Trust is given to secure the payment and performance of the following obligations, indebtedness, and liabilities (the **"Obligations"**): (a) all Obligations of Trustor under the Promissory Note of this date payable to Beneficiary, in the principal amount of Six Hundred Eleven Thousand Two Hundred Fifty only in US Dollars ($611,250.00), as well as any other substituted note and all modifications, renewals, or extension of the note (the **"Note,"** and the payee and all subsequent holders of the Note are collectively the **"Beneficiary"** and the transaction creating the Note is the **"Loan"**); (b) all Obligations under this Deed of Trust as it may be amended from time to time, (c) all present and future loans, advances, or other extensions of credit obtained by Trustor from Beneficiary, and all promissory notes evidencing such present or future loans, advances, or other extensions of credit, including Trustor's Obligations under any present or future loan or credit agreement executed by Trustor, including the Assignment of Lessor's Interest in Leases and Rents of the same date (the **"Assignment"**), including any other agreement granting additional security interests (collectively, **"Other Security Documents"**), and all liabilities that Trustor may now or in the future owe to Beneficiary.  Collectively the Obligations referred to above are called the **"Debt."**

      Notwithstanding any provision of this Deed of Trust to the contrary, in no event shall this Deed of Trust secure the Obligations of Trustor or any Guarantor arising exclusively under (i) any guaranty of the same date (the **"Guaranty"**) or (ii) any Environmental Certificate and Indemnity Agreement of the same date, given by Trustor or any other person to Beneficiary (the **"Environmental Indemnity"**).  The definition of "Other Security Documents" shall not include the Guaranty or the Environmental Indemnity.

      2.     Representations, Warranties and Covenants.

          (a) Warranty of Title.  Trustor warrants that Trustor has good title to the Trust Property and has the unrestricted right to grant the security interests given in this Deed of Trust and that Trustor presently possesses an unencumbered fee simple estate in the Premises and the Improvements except for those shown in the title report for this transaction (the **"Permitted Encumbrances"**), and that this Deed of Trust is and will remain a valid and enforceable lien on and security interest in the Trust Property, subject only to the Permitted Encumbrances.  Trustor shall forever warrant, defend and preserve such title and the validity and priority of the lien of this Deed of Trust, subject to the Permitted Encumbrances, and shall forever warrant and defend the same to Beneficiary against the claims of all persons.

          (b) Representations and Covenants Concerning Loan.  Trustor represents, warrants and covenants as follows:

               (i) All certifications, permits, licenses and approvals, including certificates of completion and occupancy permits required for the legal use, occupancy and operation of the Trust Property as currently operated (collectively, the **"Licenses"**), have been obtained and are in good standing (including, without limitation, any applicable liquor license).  The Trustor shall keep and maintain all Licenses.  The Trust Property is free of material damage and is in good repair, and there is no proceeding pending for the total or partial condemnation of, or affecting, the Trust Property.

               (ii) All of the Improvements which were included in determining the appraised value of the Trust Property lie wholly within the boundaries and building restriction lines of the Trust Property, and no improvements on adjoining properties encroach upon the Trust Property, and no easements or other encumbrances upon the Premises encroach upon any of the Improvements, so as to affect the value or marketability of the Trust Property except those which are insured against by the Beneficiary's policy of mortgagee's title insurance insuring the lien of this Deed of Trust.  All of the Improvements comply with all material requirements of any applicable zoning and subdivision laws and ordinances.

               (iii) The Trust Property is not subject to any Leases other than the Leases described in the rent roll delivered to Beneficiary in connection with this Deed of Trust.  No person has any possessory interest in the Trust Property or right to occupy the same except under and pursuant to the provisions of the Leases.  The current Leases are good standing.

               (iv) The Trust Property is and shall at all times remain in compliance with all statutes, ordinances, regulations and other governmental or quasi-governmental requirements and private covenants now or in the future relating to the ownership, construction, use or operation of the Trust Property.

               (v) There has not been committed by Trustor or, to Trustor's knowledge, any other person in occupancy of or involved with the operation or use of the Trust Property any act or omission affording the federal government or any state or local government the right of forfeiture as against the Trust Property or any part thereof or any monies paid in performance of Trustor's obligations under this Deed of Trust or any of the Other Security Documents.  Trustor hereby covenants and agrees not to commit, permit or suffer to exist any act or omission affording such right of forfeiture.

               (vi) Neither the execution and delivery of the Note, this Deed of Trust, or the Other Security Documents, nor the Trustor's performance thereunder, nor the recordation of this Deed of Trust, nor the

(ii)  Insurance (**"Building Insurance"**) on all buildings, fixtures and improvements located on the Trust Property against "special perils" (including "ordinance or law coverage"), in amounts at least equal to the greater of: (x) the full replacement cost thereof (without deduction for depreciation) as such replacement cost shall be determined from time to time at the reasonable request of Beneficiary; or (y) unless prohibited by law, the unpaid principal amount of the Debt. The Building Insurance shall include a co-insurance waiver or agreed amount endorsement. Such insurance shall, during the course of any construction of additions to the Improvements, be on Special Form Builder's Risk 100% Completed Value Non-Reporting Form or other form approved by Beneficiary;

(iii)  Insurance on personal property against fire and any peril generally included within the classification of "extended coverage" (**"Personal Property Insurance"**) in amounts at least equal to the replacement value thereof;

(iv)  Rental value or business interruption insurance (or a combination thereof as Beneficiary may require) (**"Rental Value or Business Interruption Insurance"**) on all buildings, fixtures, improvements, and other constructions located on and forming a part of the Trust Property as above described (including parking and common areas) against loss by the perils covered by the Building Insurance in amounts of not less than the amount of Trustor's annual gross income from the Trust Property or Trustor's debt service on the Trust Property (including required payments to the Escrow Fund), for twelve (12) months, whichever is greater. Such Rental Value or Business Interruption Insurance shall contain an endorsement extending the period of indemnity for not less than ninety (90) days after restoration of said buildings, fixtures and improvements is completed;

(v)  If and whenever Trustor shall have employees, workers' compensation insurance as required by law and employer's liability insurance with limits of liability of not less than $100,000/$500,000/$100,000;

(vi)  If the Trust Property is located in an area which has been identified by the Secretary of Housing and Urban Development as a flood hazard area and in which flood insurance has been made available under the National Flood Insurance Act of 1968 (the **"Act"**), Trustor shall keep the Trust Property covered by flood insurance (**"Flood Insurance"**) up to the maximum limit of coverage available under the Act, but not in excess of the amount of the Debt; and

(vii)  Such other insurance with respect to the Trust Property in such amounts and against such insurable hazards as Beneficiary from time to time may reasonably require (**"Additionally Required Insurance"**).

All insurance required hereunder, including the CGL Insurance (the **"Policies"**), shall provide that coverage shall not be revised, cancelled or reduced until at least thirty (30) days' written notice of such revision, cancellation or reduction shall have been given to Beneficiary; be issued by insurance companies which are qualified to do business in the State, which have at least one of the following A.M. Best Co. combinations of Best's Rating and Best Financial Size Category: A-, XV; A, XIII; A+, IX; or A++, VIII; and which are satisfactory to Beneficiary in all other ways.

The CGL Insurance shall name Beneficiary as an additional insured; apply severally as to Trustor and Beneficiary (excepting the limits of liability); cover each of them as insureds in the same manner as if separate policies had been issued to each of them (excepting the limits of liability); contain no provisions affecting any rights which any of them would have as claimants if not so named as insureds; and be primary insurance with any other valid and collectible insurance available to Beneficiary constituting excess insurance.

The Building Insurance, Personal Property Insurance, Rental Value or Business Interruption Insurance, and Flood Insurance shall name Beneficiary as an additional insured; and have attached to them a Lender's Loss Payable Endorsement naming Beneficiary as Lender, a standard waiver of subrogation endorsement, a stipulated amount endorsement, and a full replacement cost endorsement.

(b)  Delivery of Policy. Trustor will deliver to Beneficiary original binders or evidence of all required insurance to Beneficiary and Trustor shall promptly furnish to Beneficiary copies of all renewal notices and all receipts of paid premiums received by it. At least ten (10) days prior to the expiration date of a required policy, Trustor shall deliver to Beneficiary a renewal binder or evidence of insurance in a form satisfactory to Beneficiary.

(c)  Assignment of Policy. If the Trust Property is sold at a foreclosure sale or if Beneficiary shall acquire title to the Trust Property, Beneficiary shall have all of the rights of Trustor to the Policies and the unearned premiums on them and to the proceeds resulting from any damage to Trust Property prior to such sale or acquisition.

(d)  Notice of Damage or Destruction; Adjusting Loss. If any part of the Trust Property is damaged or destroyed by fire or other casualty, Trustor will promptly give written notice thereof to the insurance carrier and Beneficiary, and will not adjust any damage or loss which exceeds $10,000 unless Beneficiary joins in the adjustment; but if there has been no adjustment of any such damage or loss within four months from the date of

Proceeds (after first deducting therefrom Beneficiary's reasonable expenses incurred in collecting them) available to Trustor to reimburse Trustor for Trustor's reasonable costs of restoration, repair, replacement or rebuilding of the Improvements and Equipment, in accordance with procedures reasonably required by Beneficiary (and shall not be applied toward the payment of the Debt until after restoration and repair of the Improvements and Equipment) provided:

(i) There is no Event of Default;

(ii) Trustor has notified Beneficiary of Trustor's intention to perform such restoration or repair within thirty (30) days after adjusting the loss or casualty;

(iii) Beneficiary receives reasonably satisfactory evidence that the Premises and Equipment have been fully restored or that by application of the Proceeds will be fully restored to their condition prior to the damage or destruction, free and clear of all liens other than the Permitted Encumbrances;

(iv) If, in the reasonable judgment of Beneficiary, the Proceeds will be insufficient to restore the Improvements and Equipment to their condition prior to the damage or destruction, Trustor shall demonstrate to Beneficiary the availability of funds which, together with the Proceeds, are sufficient to restore the Improvements and Equipment to their condition prior to the damage or destruction; and

(v) There will, in the reasonable judgment of Beneficiary, remain sufficient time to complete the restoration or repair of the Improvements and Equipment prior to the Date of Maturity (as defined in the Note).

Any Proceeds remaining after reimbursement of Trustor for its costs of restoring the Improvements and Equipment, at Beneficiary's option, may be applied to partial prepayment of the Debt. Any such application of the Proceeds to the payment of the Debt shall be without prepayment premium or penalty, if any, otherwise applicable and shall not extend or postpone the due dates of the monthly installments under the Note or change the amount of such installments. Any remaining proceeds not applied to the Debt shall be paid to Trustor.

4.    Payment of Impositions. Subject to the payments in the manner provided in Paragraph 5 hereof and to Paragraph 8 relating to contests, Trustor shall pay when due all taxes (both real and personal), assessments, water charges, sewer charges, ground rents, maintenance charges and all other charges, including, without limitation, vault charges and license fees for the use of vaults, chutes and similar areas adjoining the Premises, now or hereafter levied or assessed or imposed against the Trust Property (the "**Impositions**"). Trustor shall deliver to Beneficiary, upon request, evidence satisfactory to Beneficiary that the Impositions are not delinquent. Trustor shall not permit and shall promptly cause to discharged any lien or charge which becomes a lien or charge against the Trust Property, and shall promptly pay for all utility services provided to the Trust Property.

5.    Escrow Fund. At the option of the Beneficiary, Beneficiary may require Trustor to establish an Escrow Fund (defined below) sufficient to pay all Impositions and all insurance premiums for all Policies (the "**Insurance Premiums**") pursuant to this Deed of Trust. Initial deposits of Impositions and Insurance Premiums shall be made by Trustor to Beneficiary in amounts determined by Beneficiary in its discretion on the date hereof to be held by Beneficiary or its agent, in escrow. Additionally, Trustor shall pay to Beneficiary on the first day of each calendar month one-twelfth of an amount which would be sufficient to pay the Impositions and Insurance Premiums upon the due dates for them (the initial deposits and the amounts referred to in the previous sentence shall be called the "**Escrow Fund**"). Trustor agrees to notify Beneficiary immediately of any changes to the amounts, schedules and instructions for payment of any Impositions and Insurance Premiums and authorizes Beneficiary or its agent to obtain the bills for Impositions directly from the appropriate tax or insurance authority. The Escrow Fund and the payments of interest or principal or both under the Note shall be added and paid together. Provided there are sufficient amounts in the Escrow Fund and no Event of Default exists, Beneficiary shall pay the Impositions and Insurance Premiums when due with funds from the Escrow Fund. If the Escrow Fund is insufficient to pay the items set forth above, Trustor shall pay, upon demand, to Beneficiary, any shortage. Unless otherwise required by applicable law, no earnings or interest on the Escrow Fund shall be payable to Trustor.

6.    Liens. Subject to Paragraph 8 hereof relating to contests, the Trustor shall not create or permit any lien, encumbrance or charge on the Trust Property inferior to the lien of this Deed of Trust. Trustor shall pay, when due, the claims of: (i) all persons supplying labor or materials to or in connection with the Trust Property; and (ii) registered or certified surveyors or engineers, or licensed architects, or their professional consultants supplying professional services in connection with the Trust Property.

7.    Compliance with Laws. Subject to Paragraph 8 relating to contests, Trustor shall comply with all present and future statutes, laws, rules, orders, regulations and ordinances affecting the Trust Property, any part thereof or the use thereof and shall comply with all covenants, conditions and restrictions applicable to the Trustor which are contained in any documents constituting a Permitted Encumbrance.

8.    Permitted Contests. The Trustor shall not be required to (i) pay any tax, assessment or other charge referred to in paragraph 4, (ii) discharge or remove any lien, encumbrance or charge referred to in Paragraph 6 or (iii) comply with any statute, law, rule, regulation or ordinance referred to in Paragraph 7, if Trustor (a) contests, in

conveyance thereof in lieu of condemnation, unless Beneficiary has first consented thereto in writing, which consent shall not be unreasonably withheld or delayed. All Taking awards shall be adjusted jointly by Trustor and Beneficiary. All awards payable as a result of a Taking which exceed $10,000 shall be paid to Beneficiary. Beneficiary may, at its option, apply the proceeds, after first deducting its expenses incurred in the collection of them, to the payment of the Debt, whether or not due and in such order of application as Beneficiary may determine, or to the repair, replacement, rebuilding or restoration of the Trust Property, in such manner as Beneficiary may determine; provided, however, that any such application of any award payable as a result of a Taking, to the payment of the Debt, shall be without prepayment premium or penalty.

(b) All Awards that exceed $10,000 shall be paid to Beneficiary. Beneficiary shall make all Awards (after first deducting Beneficiary's expenses to collecting the Award) available to Trustor to reimburse Trustor for its reasonable costs of restoration, repair, replacement or rebuilding of the Improvements; subject, however to conditions substantially similar to the conditions imposed under the terms of Paragraph 3(e) above, relating to the use of Proceeds. Any excess portion of any Award shall applied to partial prepayment of the Debt, without prepayment premium or penalty and shall not extend or postpone the due dates of monthly payments.

(c) TRUSTOR HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ALL RIGHTS OF A PROPERTY OWNER UNDER SECTION 1265.225(A) OF THE CALIFORNIA CODE OF CIVIL PROCEDURE OR ANY SUCCESSOR STATUTE PROVIDING FOR THE ALLOCATION OF CONDEMNATION PROCEEDS BETWEEN A PROPERTY OWNER AND A LIEN HOLDER.

10.    Leases and Rents. Trustor agrees that Beneficiary has the right to enter the Trust Property for the purpose of enforcing its interest in the Leases and the Rents. Nevertheless, subject to the terms of this Paragraph, Beneficiary grants Trustor a limited license to collect the Rents. Trustor shall hold the Rents, or that portion thereof sufficient to discharge all current sums due and unpaid by Trustor under the terms of the Note, whichever is less, in trust for use in the payment of the Debt.

Upon the occurrence of an Event of Default, Trustor's limited license to collect Rents shall automatically terminate, and any rents previously collected and in Trustor's possession shall thereafter be held in trust for payment of the Debt. Beneficiary may enter upon the Trust Property, collect and retain the Rents and apply the Rents toward payment of the Debt in such priority and proportions as Beneficiary in its discretion shall deem proper. All Major Tenant Leases (as defined below) entered into subsequent to the date hereof shall be approved, in writing, by Beneficiary. Upon request, Trustor shall furnish Beneficiary with executed copies of all Leases. In addition, all renewals of Leases and all proposed Leases shall provide for rental rates comparable to existing local market rates (taking into account reasonable free-rent periods or other promotional discounts consistent with local market conditions) and shall be arm's length transactions. All Leases shall provide that they are subordinate to this Deed of Trust, and that the lessee attorns to Beneficiary. Trustor shall not, without the consent of Beneficiary, cancel any Major Tenant Lease or accept prepayments of installments of Rent under a Major Tenant Lease for a period of more than one (1) month in advance or further assign the whole or any part of the Leases or the Rents. Trustor shall perform each provision of every Lease. All security and other deposits received by Trustor under any Lease shall be maintained in a separate account at a bank, and shall not be commingled with Trustor's other funds. If an Event of Default occurs, Beneficiary, at its option, may require Trustor to pay monthly in advance to Beneficiary, or any receiver appointed to collect the Rents, the fair rental value for the portion of the Trust Property possessed by Trustor and may require Trustor to surrender possession of the Trust Property to Beneficiary or to such receiver and, in default thereof, Trustor may be evicted by summary proceedings or otherwise. For purposes of this Paragraph, a "Major Tenant Lease" shall mean any Lease under which the tenant occupies at least 5,000 square feet of the Premises, or which is for a term of at least 10 years, or which otherwise represents at least 25% of the sum total of the Rent under all Leases of the Trust Property.

11.    Preservation and Maintenance of Trust Property. Trustor (i) shall keep the Improvements now or hereafter erected on the Premises in safe and good repair and condition, ordinary depreciation excepted; (ii) shall, upon damage or destruction of the Trust Property or any part thereof by fire or other casualty, restore, repair, replace or rebuild the Trust Property that is damaged or destroyed to the condition it was in immediately prior to such damage or destruction, whether or not any insurance proceeds are available or sufficient for such purpose; provided, however, that if Beneficiary shall apply all the insurance proceeds or any portion thereof to payment of the Debt, Trustor shall have the option, in lieu of completing such repair, replacement, rebuilding or restoration, to pay in full the Note and the entire Debt without payment of a premium or penalty; (iii) shall constantly maintain the parking and landscaped areas of the Trust Property; (iv) shall not commit waste or permit impairment or deterioration of the Trust Property; (v) shall not construct additions to existing buildings or additional buildings on the Premises without the prior written consent of the Beneficiary, which consent shall not be unreasonably withheld or delayed; (vi) shall not remove from the Premises any of the fixtures and personal property included in the Trust Property unless the same is immediately replaced with property of at least equal value and utility, and the Deed of Trust becomes a valid first lien on such property; and (vii) shall maintain the roofs of the Improvements in safe,

Page 33

meaning of this Paragraph shall be deemed to include (i) an installment sales agreement in which Trustor agreement in which Trustor agrees to sell any part of the Trust Property for a price to be paid in installments; (ii) an agreement by Trustor leasing all or a substantial part of the Trust Property, or a sale, pledge, assignment or other transfer of, or the grant of a security interest in, Trustor's right, title and interest in any Leases or any Rents; (iii) if Trustor is a corporation or a limited partnership with a corporate general partner, the transfer of stock of the Trustor or its corporate general partner to parties who do not now hold a controlling interest; (iv) if Trustor is a general or limited partnership, joint venture, or other form of partnership (a **"Partnership"**), a transfer of any general partnership interest or the admission of any new general partner; and (v) if Trustor is a limited liability company or a limited partnership with a limited liability company as general partner, the transfer of membership interests in the Trustor or its limited liability company general partner (or the stock or membership interests in any corporation or limited liability company controlling Trustor or its limited liability company general partner) or the creation or issuance of new memberships in Trustor or its limited liability company general partner to parties who do not now own a controlling interest. Beneficiary reserves the right to condition its consent upon a modification of the terms of this Deed of Trust and the Note and on assumption of this Deed of Trust as so modified, by the proposed transferee, payment of a transfer or assumption fee, or such other conditions as Beneficiary shall determine in its sole discretion to be in the interest of Beneficiary. Beneficiary shall not be required to demonstrate any actual impairment of its security or any increased risk of default in order to declare the Debt immediately due and payable upon Trustor's sale, transfer, conveyance or further encumbrance of the Trust Property without Beneficiary's consent. This provision shall apply to every sale, transfer, conveyance, or further encumbrance of the Trust Property regardless of whether voluntary or not or whether or not Beneficiary has consented to any previous sale, transfer, conveyance, or further encumbrance of the Trust Property regardless of whether voluntary or not or whether or not Beneficiary has consented to any previous sale, transfer, conveyance, or further encumbrance of the Trust Property.

13.     Estoppel Certificates. After request by Beneficiary, Trustor, within ten (10) days and at its expense, will furnish the Beneficiary with a statement, duly certified, confirming or otherwise setting forth the original principal amount of the Note, the unpaid principal amount of the Note, the rate of interest on the unpaid principal amount of the Note, the dates installments of interest (or any principal) were last paid, the offsets or defenses to the payment of the Debt, if any, and that the Note and this Deed of Trust are valid, legal and binding obligations and have not been modified or, if modified, giving particulars on such modification.

14.     Notices. Any notice, demand, statement, request, or consent made under this Deed of Trust shall be in writing and shall be deemed given when hand delivered, or within three (3) days after the date sent by certified mail, return receipt requested, or the next business day after the date sent by nationally recognized overnight mail or courier service to the address, as set forth above, of the party to whom such notice is to be given, or to such other address as Trustor, Trustee or Beneficiary, as the case may be, shall in like manner designate in writing.

Trustor hereby requests that, unless otherwise prescribed by law, a copy of any notice of default or notice of sale pursuant to the nonjudicial foreclosure of this Deed of Trust be mailed to Trustor at the mailing address set forth in the preamble above.

15.     Sale of Trust Property. If this Deed of Trust is foreclosed, the Trust Property, or any interest therein, may at the discretion of Beneficiary be sold in one or more parcels or in several interests or portions and in any order or manner as may be permitted by applicable law.

16.     Right of Entry. Beneficiary and its agents shall have the right to enter and inspect the Trust Property at all reasonable times upon notice to Trustor.

17.     Books and Records. Trustor shall keep adequate books and records of account and furnish Beneficiary with financial statements prepared by a certified public accountant reasonably acceptable to Beneficiary, and other information concerning the affairs of Trustor as Beneficiary may reasonably request, in form and detail reasonably satisfactory to Beneficiary, including, annual statements of income and expense related to the operation of the Trust Property (including a current rent roll, gross rental income, other income, real estate taxes, insurance, operating expenses and depreciation), a copy of Trustor's federal income tax return (including all supporting schedules) within 90 days after the end of each fiscal year, and from time to time, interim financial statements and other information as reasonably requested by Beneficiary. All such financial statements, and other information shall be certified to be true and accurate by an individual responsible for the financial affairs of Trustor, in such individual's individual capacity.   In the event that such financial statements and other information are not furnished to Beneficiary by Trustor, or, if furnished, are not in a form reasonably acceptable to Beneficiary, Beneficiary may, in addition to any other remedies which Beneficiary has under this Deed of Trust, the Note, or any of the Other Security Documents, audit the books and records of Trustor, and any expense of the audit shall be added to the Debt. Immediately upon the appointment of a receiver of the Trust Property by a court of competent jurisdiction, Trustor shall deliver all books and records or other documents required to be maintained under the

(e) If any representation or warranty of Trustor, or of any person guaranteeing or otherwise liable for payment of the Debt (a "**Guarantor**") or in any such Guaranty, or in any certificate, report, financial statement or other instrument furnished in connection with the making of the Note, this Deed of Trust, or any such Guaranty, shall be false or misleading in any material respect and the inaccuracy is not cured to the reasonable satisfaction of Beneficiary, within fifteen (15) days after written notice from Beneficiary to Trustor provided, however, that if the default is of a kind that it cannot be cured within 15 days, then Trustor shall not be in default if Trustor commences curing the default within a reasonable time and diligently completes the cure within a reasonable time, but not more than 60 days after the date of the original written notice; or

(f) If Trustor or any Guarantor makes an assignment for the benefit of creditors; or

(g) If a receiver, liquidator or trustee of Trustor or of any Guarantor shall be appointed or if Trustor or any Guarantor is adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, is filed by or against Trustor or any Guarantor, or if any proceeding for the dissolution or liquidation of Trustor or of any Guarantor is instituted and, if such appointment, adjudication, petition or proceeding was involuntary, if it is not discharged, stayed or dismissed within thirty (30) days or if Trustor is generally not paying its debts as they become due; or

(h) If Trustor defaults under any other mortgage, deed of trust or security agreement covering any part of the Trust Property whether it be superior or inferior to the lien of this Deed of Trust, and if such default is not cured within any applicable cure or grace period; or

(i) If the Trust Property is subjected (i) to any lien which is superior to the lien of this Deed of Trust, other than a lien for local real estate taxes and assessments not yet delinquent and any Permitted Encumbrances, or (ii) to any mechanic's, materialmen's, construction, or other lien which is superior to the lien of this Deed of Trust and such lien remains undischarged for thirty (30) days.

If one or more of the Events of Default occurs, the Debt shall include interest on the Debt at the Default Rate as defined in the Note upon any unpaid portion of the Debt and the entire Debt shall become immediately due and payable at the option of the Beneficiary, without further notice or demand; and, in addition, whether or not Beneficiary exercises its option, it may exercise all rights and remedies available to it under the law, including the following:

(j) Beneficiary may enter upon, take immediate possession of, manage, and operate the Trust Property or any part thereof, make repairs and alterations and do any acts that Beneficiary deems reasonable to protect the security of the Deed of Trust, including remedies contained in any of the Other Security Documents; and either with or without taking possession, in its own name, collect the rents, issues and profits, including those past due and unpaid, and apply the rents, less costs and expenses of operation and collection, including reasonable attorneys' fees and the Beneficiary's costs, upon the Debt and in such order as Beneficiary determines. If Beneficiary requests, Trustor shall assemble and make available to Beneficiary at the Premises any of the Trust Property that has been removed. None of the foregoing actions shall cure or waive any Event of Default and Beneficiary shall be entitled to exercise every remedy allowed in this Deed of Trust or by law after an Event of Default.

(k) Beneficiary shall be entitled to the immediate ex parte appointment of a receiver, without notice, to take possession of and protect the Trust Property and to operate it and collect the rents, issues and profits from it.

(l) Beneficiary may bring sue to foreclose this Deed of Trust or to enforce any of its provisions.

(m) Trustee may, and upon Beneficiary's request, elect to sell the Trust Property or its parts as follows:

(i) Trustee may proceed as if all of the Trust Property were real property in accordance with subparagraph (iv) below, or Trustee may elect to treat any of the Trust Property which consists of a right in action or which is property that can be severed from the Premises without causing structural damage thereto as if the same were personal property and dispose of the same in accordance with subparagraph (iii) below, separate from the sale of real property, the remainder of the Trust Property being treated as real property.

(ii) Trustee may cause any such sale or other disposition to be conducted immediately following the expiration of any grace period, if any, provided in this Deed of Trust or the Note, or Trustee may delay any such sale or other disposition as Trustee deems to be in its best interest. If Trustee conducts more than one sale, Trustee may, at its option, cause the sales to be conducted simultaneously, or successively on the same day, or at different days or times and in such order as Trustee may deem to be in its best interest.

(iii) If Trustee elects to dispose of personal property as permitted in subparagraph (i) above, it or Beneficiary may dispose of any part thereof in any manner permitted by Article 9 of the California Commercial Code. Both Trustor and Beneficiary shall be eligible to purchase any part of such property at any sale. Any such disposition may be either public or private, as Trustee or Beneficiary may so elect, subject to the provisions of the California Commercial Code. Trustee or Beneficiary shall give Trustor at least ten (10) days'

deliver to the purchaser, a deed conveying the property so sold, but without any covenant or warranty, express or implied, after which the purchaser shall be entitled to immediate possession.

(v) This instrument shall be effective as a mortgage as well as a deed of trust and if an Event of Default occurs, may be foreclosed as to any of Trust Property in any manner permitted by the laws of the State, and any foreclosure suit may be brought by the Trustee or by the Beneficiary. In a foreclosure is commenced by the then Trustee, the Beneficiary may at any time before the sale of the Trust Property direct the Trustee to abandon the sale, and may then institute or complete a suit for the collection of the Note and the other Debt, and for judicial foreclosure of this Deed of Trust. It is agreed that if the Beneficiary institute a suit for the collection of the Note or any other Debt and for the judicial foreclosure of this Deed of Trust, the Beneficiary may at any time before the entry of a final judgment in said suit dismiss it, and require the Trustee to sell the Trust Property under the provisions of this Deed of Trust.

(vi) The recital of facts, such as default, the giving of Notice of Default, and Notice of Sale, terms of sale, purchaser, payment of purchase money, and any other fact affecting the regularity or validity of such sale or disposition in a trustee's deed or other conveyance, shall be conclusive proof of the truth of those facts and conclusive against all persons.

(vii) The proceeds of any sale or disposition, together with any other sums which then may be held by Trustee or Beneficiary, shall be applied as follows: FIRST, to the expenses of such sale or disposition together with Trustee's fees and reasonable attorneys' fees and expenses, Beneficiary's costs and the actual cost of publishing, recording, mailing and posting notice; SECOND, to the cost of any search or other policy of title procured in connection with the sale, if applicable, and recordation and transfer taxes and other charges, if any, on any release or deed of reconveyance; THIRD, to payment of all amounts secured by this Deed of Trust, the Note and the Other Security Documents, and all other sums due Beneficiary from Trustor; FOURTH, to all other sums secured hereby; and the remainder, if any, to the person or persons legally entitled thereto in the order of their priority.

Without limiting the generality of the foregoing, Trustee is expressly authorized to conduct a "unified sale" under Section 9501(4) of the California Commercial Code.

Any payment of the principal amount of Debt subsequent to the entire amount of the Debt becoming immediately due and payable under the terms of this Paragraph shall be deemed a prepayment of such principal amount subject to liquidated damages as specified under the terms of the Note.

The Beneficiary shall have the right to become the purchaser at any sale held by any Trustee or by any receiver or public officer, and Beneficiary shall have the right to credit upon the amount of the bid made, to the extent necessary to satisfy such bid, the Debt owing to Beneficiary, or if Beneficiary holds less than all of such indebtedness the pro rata part owing to Beneficiary, accounting to all other beneficiaries or noteholders not joining in such bid in cash for the portion of such bid or bids apportionable to such nonbidding beneficiary or noteholder.

The Trustee may be removed at any time with or without cause by an instrument in writing executed by the Beneficiary, or if there is more than one Beneficiary, by a writing executed by a majority in ownership of the Beneficiaries. In case of the death, resignation, removal or disqualification of the Trustee or if for any reason the Beneficiary shall deem it desirable to appoint a substitute or successor trustee to act instead of the herein named Trustee or any substitute or successor trustee, then the Beneficiary shall have the right and hereby is authorized and empowered to appoint a successor trustee, or a substitute trustee, without other formality than appointment and designation in writing executed by the Beneficiary and the authority hereby conferred shall extend to the appointment of other successor and substitute trustees successively until the Debt finally has been paid in full or until the Trust Property is sold. All references herein to the Trustee shall refer to the Trustee from time to time acting hereunder.

20. <u>Right to Cure Defaults</u>. If an Event of Default occurs, Beneficiary may, but is not required to, and without notice to or demand on Trustor and without releasing Trustor from any obligation, make or do the same in such manner and to such extent as Beneficiary may deem necessary or advisable to protect the security hereof. Beneficiary is authorized to enter upon the Trust Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Trust Property or to foreclose this Deed of Trust or collect the Debt, and the cost and expense thereof (including attorneys' fees and expenses) with interest as provided in this Paragraph, shall be due upon demand from Beneficiary to Trustor. All such costs and expenses incurred by Beneficiary in remedying such Event of Default or in appearing in, defending, or bringing any such action or proceeding shall be paid at the Default Rate as stated and defined in the Note and secured by this Deed of Trust.

21. <u>Non-Waiver</u>. Beneficiary's failure to insist upon strict performance of a term of this Deed of Trust shall not be a waiver of any term of this Deed of Trust. Trustor shall not be relieved of its obligations because (i) Beneficiary fails to comply with any request of Trustor or any Guarantor to take any action to foreclose this Deed of Trust or otherwise enforce any of its provisions or of the Note or Other Security Documents, (ii) any part of the Trust Property is released or substituted, or (iii) Trustor or Beneficiary extend the time of payment or

SUBJECT TO THE CALIFORNIA COMMERCIAL CODE OR THE UNIFORM COMMERCIAL CODE OF ANY OTHER STATE OR STATES WHERE THE TRUST PROPERTY IS SITUATED (said portion of the Trust Property so subject to a Commercial Code being called in this Paragraph the "**Collateral**"). If an Event of Default occurs, Beneficiary shall have and may exercise immediately and without demand, all rights and remedies granted to a secured party upon default under the California Commercial Code, including, the right to take possession of the Collateral, and to take such other measures as Beneficiary may deem reasonably necessary or advisable for the care, protection and preservation of the Collateral. Trustor shall pay to Beneficiary on demand any expenses, including attorneys' fees and expenses, incurred by Beneficiary in protecting its interest in the Collateral and in enforcing its rights to the Collateral. Any notice of sale, disposition or other intended action by Beneficiary as to the Collateral sent to Trustor at least ten (10) days prior to such action, shall constitute reasonable notice to Trustor. The proceeds of any disposition of the Collateral may be applied by Beneficiary to the payment of the Debt in the priority and proportions as Beneficiary in its discretion shall deem proper.

    24.   <u>Fixture Filing</u>. From the date of its recording, this Deed of Trust shall be effective as a financing statement filed as a fixture filing with respect to all goods constituting part of the Trust Property which are or become fixtures related to the real estate described in this Deed of Trust. For this purpose, the following information is set forth:

    (a)   Name and address of Debtor:

        J.D. Davis
        4434 ½ Victoria Park Pl
        Los Angeles, CA 90019

    (b)   Name and Address of Secured Party:

        BRC Commercial Bridge Fund, LLC
        1617 S Pacific Coast Hwy, Ste C
        Redondo Beach, CA 90277

    (c)   This document covers goods that are or are to become fixtures.

    (d)   Description of Real Estate: See Exhibit "A".

    (e)   Owner of Record of Real Estate: Debtor.

    (f)   This Financing Statement covers Proceeds.

    (g)   Products of the Collateral are also covered.

    25.   <u>Authority</u>. Trustor has full power, authority and legal right to execute this Deed of Trust, and to create the security interest in the Trust Property contained in this Deed of Trust and to keep and observe all of the terms of this Deed of Trust.

    26.   <u>Actions and Proceedings</u>. Trustee and Beneficiary have the right to appear in and defend any action or proceeding affecting the Trust Property and to bring any action or proceeding, in the name of Trustor, which Trustee and Beneficiary, in their discretion, decide should be brought to protect their interests in the Trust Property. Trustee and Beneficiary shall, at their option, be subrogated to the lien of any mortgage, deed of trust, or other security instrument discharged in whole or in part by the Debt, and any such subrogation rights shall constitute additional security for the payment of the Debt.

    27.   <u>Inapplicable Provisions</u>. Whenever possible, each provision of this Deed of Trust shall be interpreted as effective and valid under applicable law, but if any provision of this Deed of Trust is prohibited or invalid, it shall be ineffective to the extent necessary to make the remaining provisions valid.

    28.   <u>Duplicate Originals</u>. This Deed of Trust may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be one and the same instrument.

    29.   <u>Certain Definitions</u>. Words used in this Deed of Trust in singular or plural form shall include the other, and the word **"Trustor"** shall mean "each Trustor or any subsequent owner or owners of the Trust Property or any part thereof or any interest therein," the word **"Trustee"** shall mean "Trustee and any successor trustee appointed by Beneficiary according to law," the word **"Beneficiary"** shall mean "Beneficiary or any subsequent holder of the Note or any part thereof or any of the Debt," and the word **"Note"** shall mean "the Note or any other evidence of indebtedness secured by this Deed of Trust," the word **"person"** shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, or other entity, the words **"Trust Property"** shall include any portion of the Trust Property or interest in it, and the word **"Debt"** shall mean the principal balance of the Note with interest as provided in the Note and this Deed of Trust and all other indebtedness, obligations, and liabilities due pursuant to the Note, this Deed of Trust, or the Other Security Documents; whenever the context may require, any pronouns used shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

    30.   <u>No Oral Change</u>. This Deed of Trust may not be modified, amended, changed, discharged, waived or terminated orally, but only by a writing signed by the person against whom the enforcement of the modification, amendment, change, waiver, discharge or termination is sought.

    31.   WAIVERS. TO THE EXTENT PERMITTED BY LAW, TRUSTOR HEREBY WAIVES TRIAL

34.    Filings of Deed of Trust, Etc. Trustor shall pay all filing, registration or recording fees and all attorneys' fees, commissions, and expenses for the preparation, execution and acknowledgment of the Note, this Deed of Trust, and the Other Security Documents.

35.    Usury Laws. No terms of this Deed of Trust, the Note, or any of the Other Security Documents, shall be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate in excess of the Maximum Rate (as such term is defined in the Note). The Trustor shall never be required to pay interest at a rate in excess of the Maximum Rat. The provisions of this Paragraph shall control over all other provisions of any other instrument executed in connection herewith or executed to secure the Debt that is in apparent conflict with this Paragraph. If Beneficiary collects monies that are deemed to be interest that would increase the effective interest rate on the Note to a rate in excess of the Maximum Rate, all such excessive sums shall be applied to the reduction of the unpaid principal balance and not to the payment of interest, and if a surplus remains after full payment of principal and lawful interest, the surplus shall be refunded to Trustor in cash and Trustor hereby agrees to accept such refund.

36.    INDEMNIFICATION. TRUSTOR SHALL PROTECT, INDEMNIFY AND SAVE HARMLESS TRUSTEE AND BENEFICIARY FROM ALL LIABILITIES, OBLIGATIONS, CLAIMS, DAMAGES, PENALTIES, CAUSES OF ACTION, COSTS AND EXPENSES (INCLUDING WITHOUT LIMITATION REASONABLE ATTORNEYS' FEES AND EXPENSES) IMPOSED UPON OR INCURRED BY OR ASSERTED AGAINST TRUSTEE OR BENEFICIARY BECAUSE OF (A) FRAUD OR MATERIAL MISREPRESENTATION BY OR ON BEHALF OF THE TRUSTOR; (B) ANY FAILURE ON THE PART OF TRUSTOR TO PERFORM OR COMPLY WITH ANY OF THE TERMS OF THIS DEED OF TRUST OR THE OTHER SECURITY DOCUMENTS; (C) OWNERSHIP OF THE TRUST PROPERTY OR ANY INTEREST IN IT OR THE RECEIPT OF ANY RENTS; (D) ANY ACCIDENT, INJURY TO OR DEATH OF PERSONS OR LOSS OF OR DAMAGE TO PROPERTY OCCURRING IN, ON OR ABOUT THE TRUST PROPERTY; (E) ANY USE, NONUSE OR CONDITION IN, ON OR ABOUT THE TRUST PROPERTY OR ANY PART THEREOF; OR (F) PERFORMANCE OF ANY LABOR OR SERVICES OR THE FURNISHING OF ANY MATERIALS OR OTHER PROPERTY TO THE TRUST PROPERTY, WHETHER OR NOT CAUSED IN WHOLE OR IN PART BY THE NEGLIGENT ACTS OR OMISSIONS OF THE BENEFICIARY OR INDIVIDUALS OR ENTITIES ACTING AS THE AGENTS OR EMPLOYEES OF BENEFICIARY. HOWEVER, SUCH INDEMNITY SHALL NOT APPLY TO MATTERS CAUSED BY OR ARISING OUT OF THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF TRUSTEE OR BENEFICIARY, OR ANY OF ITS AGENTS, OR AS TO LIABILITIES, OBLIGATIONS, CLAIMS, DAMAGES, PENALTIES, CAUSES OF ACTION, COSTS AND EXPENSES BASED SOLELY ON FACTS OR CIRCUMSTANCES OCCURRING ONLY SUBSEQUENT TO SUCH TIME, IF ANY, THAT BENEFICIARY BECOMES THE OWNER OF THE TRUST PROPERTY BY WAY OF FORECLOSURE OF THE LIEN OF THE DEED OF TRUST, DEED IN LIEU OF SUCH FORECLOSURE, OR OTHERWISE. ANY AMOUNT PAYABLE TO TRUSTEE OR BENEFICIARY BECAUSE OF THE APPLICATION OF THIS PARAGRAPH SHALL BECOME IMMEDI-ATELY DUE AND PAYABLE UPON DEMAND BY BENEFICIARY, AND SHALL BEAR INTEREST AT THE DEFAULT RATE, AS STATED AND DEFINED IN THE NOTE, FROM THE DATE OF SUCH DEMAND. THE OBLIGATIONS OF TRUSTOR UNDER THIS PARAGRAPH SHALL SURVIVE ANY TERMINATION OR SATISFACTION OF THIS DEED OF TRUST.

37.    Reconveyance of Trust Property. Upon payment of all sums secured by this Deed of Trust, the Trustee shall reconvey all of the Trust Property to the person or persons entitled to such reconveyance.

38.    Governing Law. This Deed of Trust shall be governed and construed under California law.

39.    Duties and Obligations of Trustee. Trustor agrees that: (a) the duties and obligations of Trustee shall be determined solely by the express provisions of this Deed of Trust and the Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Deed of Trust, and no implied covenants or obligations shall be imposed upon Trustee; (b) no provision of this Deed of Trust shall require Trustee to expend or risk its own funds, or otherwise incur any financial obligation in the performance of any of its duties, or in the exercise of any of its rights or powers, if it shall have grounds for believing that the repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured of it; (c) Trustee may consult with counsel of its own choosing and the advice of such counsel shall be full and complete authorization and protection in the respect of any actions taken by it in good faith and in reliance upon the advice; (d) Trustee shall not be liable for any action taken by it in good faith and reasonably believed by it to be authorized or within the discretion or rights or powers conferred upon it by this Deed of Trust.

Trustee shall have the right, at its sole option and from time to time, to substitute one or more trustees for the Trustee named above, without notice to Trustor. In the event there shall be more than one trustee, either trustee may act hereunder.

40.    Request for Notice of Default and Notice of Sale. Trustor hereby requests that a copy of any notice of default and of any notice of sale pursuant to the nonjudicial foreclosure of this Deed of Trust be mailed to

BENEFICIARY (THE "**ENVIRONMENTAL INDEMNITY**"); (B) ARISING UNDER ANY HAZARDOUS
SUBSTANCE LAW; OR (C) ANY OTHER LIABILITIES, IF ANY, WHICH MAY BE INCURRED BY OR
ASSERTED AGAINST TRUSTEE OR BENEFICIARY DIRECTLY OR INDIRECTLY RESULTING FROM
THE PRESENCE OF A HAZARDOUS SUBSTANCE ON THE TRUST PROPERTY, WHETHER OR NOT
CAUSED IN WHOLE OR IN PART BY THE NEGLIGENT ACTS OR OMISSIONS OF THE TRUSTEE AND
BENEFICIARY OR INDIVIDUALS OR ENTITIES ACTING AS THE AGENTS OR EMPLOYEES OF THE
TRUSTEE OR BENEFICIARY; PROVIDED, HOWEVER, THAT SUCH INDEMNITY SHALL NOT APPLY
TO MATTERS CAUSED BY OR ARISING OUT OF THE GROSS NEGLIGENCE OR WILLFUL
MISCONDUCT OF TRUSTEE OR BENEFICIARY, OR ANY OF ITS AGENTS, OR WITH RESPECT TO
LIABILITIES, OBLIGATIONS, CLAIMS, DAMAGES, PENALTIES, CAUSES OF ACTION, COSTS AND
EXPENSES BASED SOLELY ON FACTS OR CIRCUMSTANCES OCCURRING ONLY SUBSEQUENT TO
THE TIME, IF ANY, THAT BENEFICIARY BECOMES THE OWNER OF THE TRUST PROPERTY BY WAY
OF FORECLOSURE OF THE LIEN OF THIS DEED OF TRUST, DEED IN LIEU OF SUCH FORECLOSURE,
OR OTHERWISE. FOR PURPOSES OF THIS AGREEMENT, THE FOLLOWING TERMS SHALL MEAN AS
FOLLOWS: (A) "**ENVIRONMENT**" MEANS ANY SURFACE OR SUBSURFACE WATER, WATER
VAPOR, SURFACE OR SUBSURFACE LAND, AIR, FISH, WILDLIFE, MICROORGANISMS AND ALL
OTHER NATURAL RESOURCES; (B) "**GOVERNMENTAL AUTHORITY**" MEANS THE FEDERAL
GOVERNMENT, OR ANY STATE OR OTHER POLITICAL SUBDIVISION THEREOF, OR ANY AGENCY,
COURT OR BODY OF THE FEDERAL GOVERNMENT, ANY STATE OR OTHER POLITICAL
SUBDIVISION THEREOF, EXERCISING EXECUTIVE, LEGISLATIVE, JUDICIAL, REGULATORY OR
ADMINISTRATIVE FUNCTIONS; (C) "**HAZARDOUS SUBSTANCE**" MEANS AND INCLUDES
ASBESTOS OR ANY SUBSTANCE CONTAINING ASBESTOS, POLYCHLORINATED BIPHENYLS, ANY
EXPLOSIVES, RADIOACTIVE MATERIALS, CHEMICALS KNOWN OR SUSPECTED TO CAUSE
CANCER OR REPRODUCTIVE TOXICITY, POLLUTANTS, EFFLUENTS, CONTAMINANTS, EMISSIONS,
INFECTIOUS WASTES, ANY PETROLEUM OR PETROLEUM-DERIVED WASTE OR PRODUCT OR
RELATED MATERIALS AND ANY ITEMS DEFINED AS HAZARDOUS, SPECIAL OR TOXIC
MATERIALS, SUBSTANCES OR WASTE UNDER ANY HAZARDOUS SUBSTANCE LAW, OR ANY
MATERIAL WHICH SHALL BE REMOVED FROM THE TRUST PROPERTY PURSUANT TO ANY
ADMINISTRATIVE ORDER OR ENFORCEMENT PROCEEDING OR IN ORDER TO PLACE THE TRUST
PROPERTY IN A CONDITION THAT IS SUITABLE FOR ORDINARY USE; (D) "**HAZARDOUS
SUBSTANCE LAWS**" COLLECTIVELY MEANS AND INCLUDES ANY PRESENT AND FUTURE LOCAL,
STATE, FEDERAL OR INTERNATIONAL LAW OR TREATY RELATING TO PUBLIC HEALTH, SAFETY
OR THE ENVIRONMENT INCLUDING WITHOUT LIMITATION, THE RESOURCE CONSERVATION AND
RECOVERY ACT, AS AMENDED ("RCRA"), 42 U.S.C. § 6901 ET SEQ., THE COMPREHENSIVE
ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT ("CERCLA"), 42 U.S.C. § 9601
ET SEQ., AS AMENDED BY THE SUPERFUND AMENDMENTS AND REAUTHORIZATION ACT OF 1986
("SARA"), THE HAZARDOUS MATERIALS TRANSPORTATION ACT, 49 U.S.C. § 1801 ET SEQ., THE
CLEAN WATER ACT, 33 U.S.C. § 1251 ET SEQ., THE CLEAN AIR ACT, AS AMENDED 42 U.S.C. § 7401
ET SEQ., THE TOXIC SUBSTANCES CONTROL ACT, 15 U.S.C. § 2601 ET SEQ., THE SAFE DRINKING
WATER ACT, 42 U.S.C. § 300F ET SEQ., THE URANIUM MILL TAILINGS RADIATION CONTROL ACT,
42 U.S.C. § 7901 ET SEQ., THE OCCUPATIONAL SAFETY AND HEALTH ACT, 29 U.S.C. § 655 ET SEQ.,
THE FEDERAL INSECTICIDE, FUNGICIDE AND RODENTICIDE ACT, 7 U.S.C. § 136 ET SEQ., THE
NATIONAL ENVIRONMENTAL POLICY ACT, 42 U.S.C. § 4321 ET SEQ., THE NOISE CONTROL ACT, 42
U.S.C. § 4901 ET SEQ., AND THE EMERGENCY PLANNING AND COMMUNITY RIGHT-TO-KNOW ACT,
42 U.S.C. § 11001 ET SEQ., AND THE AMENDMENTS, REGULATIONS, ORDERS, DECREES, PERMITS,
LICENSES OR DEED RESTRICTIONS NOW OR LATER PROMULGATED UNDER SUCH LAW; AND (E)
"**RELEASE**" MEANS ANY DISCHARGING, DISPOSING, EMITTING, LEAKING, PUMPING, POURING,
EMPTYING, INJECTING, ESCAPING, LEACHING, DUMPING OR SPILLING INTO THE ENVIRONMENT
(INCLUDING THE ABANDONMENT OR DISCARDING OF BARRELS, CONTAINERS AND OTHER
CLOSED RECEPTACLES). The provisions of this Paragraph are sometimes referred to as the "**Environmental
Indemnity Provisions.**"

The indemnity in this Paragraph is intended to be operable under 42 U.S.C. 9607(e)(1), and any successor
section thereof, and shall survive the foreclosure, release or reconveyance of this Deed of Trust, whether by payment of
the Debt or any deed-in-lieu of foreclosure of the Trust Property. In addition, this Paragraph is intended to be
cumulative of any rights of the Beneficiary under California Code of Civil Procedure Sections 564, 726.5 and 736 and
under California Civil Code Section 2929.5. Trustor hereby waives any restrictions or limitations that such statutes
may impose on Trustor's liability or Beneficiary's rights or remedies under this Paragraph.

Trustor agrees that: (a) this Paragraph is intended as Beneficiary's written request for information (and
Trustor's response) concerning the environmental condition of the real property security as required by California Code

remedies permitted by law.  For purposes of determining Beneficiary's right to proceed as an unsecured creditor under California Code of Civil Procedure Section 726.5(a), Trustor shall be deemed to have willfully permitted or acquiesced in a release or threatened release of hazardous materials, within the meaning of California Code of Civil Procedure Section 726.5(d)(1), if the release or threatened release of hazardous materials was knowingly or negligently caused or contributed to by any lessee, occupant or user of any portion of the Trust Property and Trustor knew or should have known of the activity by such lessee, occupant or user which caused or contributed to the release or threatened release.

THE NOTE, THIS DEED OF TRUST, ANY GUARANTY, ANY ENVIRONMENTAL INDEMNITY, AND THE OTHER SECURITY DOCUMENTS COLLECTIVELY REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

**IN WITNESS WHEREOF**, the undersigned has executed and delivered this Deed of Trust, effective as of the date first above written.

Trustor:    J.D. Davis AKA Jarrell Darnell Davis, a single man

Page 40

.

A notary public or other officer completing this certificate verifies only the
identity of the individual who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or validity of that document.

State of California                 )

County of San Bernardino )

On May 28th 2024 before me, C. Gomer-Rizo, notary public (here insert name and title of officer),
personally appeared Jarrell Darnell Davis , who proved to me on the basis of satisfactory
evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

Notary Public

Print Name: C. Gomer Rizo, notary public

My commission expires:
10/16/2024

C. GOMEZ-RIZO
COMM. # 2334954
NOTARY PUBLIC · CALIFORNIA
SAN BERNARDINO COUNTY
COMM. EXPIRES OCT. 16, 2024

.

**EXHIBIT "A"**

**LEGAL DESCRIPTION**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

Parcel No. 1

Lot 6 (the "Property") of Tract No. 31768, in the City of Jurupa Valley, County of Riverside, State of California, as shown on the Subdivision Map filed on April 3, 2014, in Book 440, Pages 79 to 89, inclusive, of Maps, in the Office of the Riverside County Recorder, and Certificate of Correction recorded August 13, 2014, as Instrument No. 2014-0307639, of Official Records.

Excepting therefrom, one-half interest in and to all oil, gas, petroleum, naptha, other hydrocarbon substances and minerals of whatsoever kind and nature as reserved to the Federal Land Bank of Berkeley, a corporation, by Deed recorded September 1, 1950, in Book 1201, Page 398 of Official Records.

Also excepting therefrom, for the benefit of grantor, its successors in interest and assignees, to the extent not already excepted or reserved by instrument of record:

A. All oil rights, mineral rights, natural gas rights and rights to all other hydrocarbons by whatsoever name known, to all geothermal heat and to all products derived from any of the foregoing (collectively, "Subsurface Resources");

B. The perpetual right to drill, mine, explore and operate for and to produce, store and remove any of the Subsurface Resources on or from the Lot, including the right to whipstock or directionally drill and mine from lands other than the Lot, wells, tunnels and shafts into, through or across the subsurface of the Lot, and to bottom such whipstocked or directionally drilled wells, tunnels and shafts within or beyond the exterior limits of the Lot, and to redrill, retunnel, equip, maintain, repair, deepen and operate any such wells or mines, but without the right to drill, mine, explore, operate, produce, store or remove any of the Subsurface Resources through or in the surface or the upper five hundred feet (500') of the subsurface of the Lot; and

Parcel No. 2

Nonexclusive easements appurtenant to the Lot for access, ingress, egress, maintenance, repair, drainage, encroachment, support, use, enjoyment and for all other purposes, as described in the Amended and Fully Restated Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for TurnLeaf, recorded on October 9, 2014, as Instrument No. 20 14-0385862, as amended by a First Amendment thereto, recorded on October 22, 2014, as Instrument No. 2014-0400177 (together with any additional amendments thereto, collectively the "Declaration"), and the Supplemental Declaration of Covenants, Conditions and Restrictions and Notice of Addition of Territory for TurnLeaf (Phase 5), (together with any amendments thereto, collectively the "Notice of Addition"), recorded on September 14, 2017, as Instrument No. 2017-0382276, all of Official Records of Riverside County, California (the "Official Records").

APN: 160-281-034

More commonly known as 5041 Violas Court, Jurupa Valley, CA 91752

# COMMERCIAL ARBITRATION AGREEMENT

*MUTUAL AGREEMENT TO ARBITRATE DISPUTES:* Borrower has or will obtain a mortgage loan (the "Loan") made or arranged by the undersigned company (the "Company"). Guarantor has or will guarantee some or all of the obligations under the Loan. Borrower, Guarantor, Company and any lender making the Loan (collectively, the "Lender") agree that any Dispute involving the Loan, including, but not limited to claims arising from the origination, documentation, disclosure, servicing, collection or any other aspect of the Loan transaction or the coverage or enforceability of this Agreement, shall be resolved exclusively by binding arbitration under the terms of this Agreement. This Agreement shall also be binding on the agents, successors and assigns of the parties and the Loan.

"Dispute" shall include, but not be limited, to:

1. Any claimed wrongdoing, such as misrepresentation, negligence, breach of contract, breach of fiduciary duty, unconscionability, fraud in the inducement, rescission, breach of the covenant of good faith and fair dealing and unfair business practices.

2. Any claimed violation of state or federal laws, including, but not limited to consumer credit, truth-in-lending, civil rights, equal opportunity, real estate settlement, housing discrimination laws, fair lending acts, licensing, loan regulation and unfair business practices acts.

"Dispute" shall not include:

1. Actions by the lender to judicially or non-judicially foreclose on the note and deed of trust (or mortgage) for the Loan, to enjoin waste, to collect rents, interpleader actions or actions for a receiver, to recover possession, ejectment or relief from the automatic stay in bankruptcy, or to obtain relief through governmental agencies.

2. Actions for provisional remedies such as a temporary restraining order or preliminary injunction or for a permanent injunction based upon an arbitration award.

*ARBITRATION OF DISPUTES:* Binding Arbitration shall be conducted under the Commercial Rules of the American Arbitration Association ("AAA"). Arbitration shall be filed at the office of the AAA nearest to the Company's principal office. Each party shall bear their own attorneys fees and arbitration costs. Judgment on the award may be entered in any court of competent jurisdiction.

*WAIVERS:*
THE PARTIES HEREBY FREELY WAIVE THE RIGHT TO TRIAL BY JUDGE OR JURY, THE RIGHT TO APPEAL, PRETRIAL DISCOVERY AND APPLICATION OF THE RULES OF EVIDENCE.

This Agreement may be signed in counterpart or signature pages, together which are one agreement.

**We have read, fully understand and agree to the above:**

BORROWER(S): J.D. Davis AKA Jarrell Darnell Davis, a single man

_____     5/28/2021
J.D. Davis AKA Jarrell Darnell Davis        date

LENDER(S):

_____     _____
BRC Commercial Debt Fund, LLC and        date
Bellaire Commercial Investments LLC

# GENERAL GUARANTY AND INDEMNITY AGREEMENT

**THIS GENERAL GUARANTY AND INDEMNITY AGREEMENT** ("**Guaranty**"), is made effective as of May 28, 2021, by the following persons in his or her individual capacities, whose addresses for purposes of this Guaranty are:

| Guarantor Name | Guarantor Address |
|---|---|
| Jarrell Darnel Davis | 4434 ½ Victoria Park Pl, Los Angeles, CA 90019 |

(which persons are hereinafter individually and collectively referred to as the "**Guarantor**") TO AND IN FAVOR OF BRC Commercial Bridge Fund, LLC and Bellaire Commercial Investments LLC (the "**Lender**"), whose address for purposes of this Agreement is 1617 S Pacific Coast Hwy, Ste C, Redondo Beach, CA 90277.

**PRELIMINARY STATEMENT.** As of the date of this Guaranty, the Lender has loaned to J.D. Davis AKA Jarrell Darnell Davis, a single man ("**Borrower**") the principal sum of $611,250.00 (the "**Loan**"), which loan is evidenced by that certain Promissory Note of Borrower of even date herewith in the amount of the Loan, bearing interest at the rate per annum as specified therein (the note and all renewals, modifications and extensions of it are collectively referred to as the "**Note**"). The Note is secured, without limitation, by that certain Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Financing Statement to and in favor of FCI Lender Services, Inc., for the benefit of Lender (the "**Deed of Trust**"), on certain real estate and personal property described therein (collectively, the "**Mortgaged Property**") and the Other Security Documents (as defined in the Deed of Trust). The Note, the Deed of Trust, the Other Security Documents being individually and collectively sometimes referred to as the "**Loan Documents**"). The Guarantor will financially and otherwise benefit from the making of the Loan by the Lender to the Borrower. It is a condition precedent to the making of the Loan by the Lender that the Guarantor shall have executed and delivered this Guaranty.

**NOW, THEREFORE**, in consideration of the premises and in order to induce the Lender to make the Loan, the Guarantor hereby agrees as follows:

1.      Indemnification. The Guarantor hereby agrees, at its sole cost and expense, to unconditionally indemnify, defend, and hold the Lender and its directors, officers, employees and agents harmless from and against any loss, liability, damage (whether direct or consequential), expenses, claims, penalties, fines, injunctions, suits, proceedings, disbursements or expenses (including, without limitation, attorneys' and experts' fees and disbursements and court costs), in connection with, or in any manner related or pertaining to, or as a result of the existence of any or all of the following:

(a)     Rents, tenant security or other deposits, insurance proceeds or condemnation awards which are not held, applied or paid over to the Lender in accordance with the terms of the Deed of Trust or the Other Security Documents;

(b)     Damages suffered by the Lender as a result of fraud or material misrepresentation by or on behalf of the Borrower in connection with the making or the servicing of the Loan;

(c)      Any diminution in value of the Mortgaged Property as a result of waste or willful damage to the Mortgaged Property caused or suffered by Borrower;

(d)      Real estate taxes, assessments, ground rents or other impositions required to be paid by Borrower by the terms of the Loan Documents;

(e)      Premiums for policies of insurance required to be maintained under the terms of the Deed of Trust, and any loss, liability or damage suffered by the Lender as a result of the non-payment of such premiums;

(f)      Court costs, attorneys' fees and expenses and other direct expenses of the Lender incurred in connection with a default by Borrower in the payment or performance required under this Note, the Deed of Trust, or the Other Security Documents prior to foreclosure or deed in lieu of foreclosure by the Lender.

2.      <u>Guaranty</u>. The Guarantor hereby agrees to guarantee the punctual payment when due, whether at stated maturity, by acceleration or otherwise, of all of the Borrower's indebtedness, obligations and liabilities to the Lender under the Loan Documents, or arising by operation of law, individually and collectively sometimes referred to as the "**Obligations**." The Guarantor absolutely, unconditionally and unequivocally guarantees the payment and performance of the Obligations strictly in accordance with the terms of the Note, the Deed of Trust, this Guaranty and the other Loan Documents, regardless of any law, regulation or order now or later in effect in any jurisdiction affecting any of such terms or the rights of the Lender.

3.      <u>Rights of the Lender</u>. Guarantor authorizes the Lender to perform any of the following acts at any time in its sole discretion, all without notice to Guarantor and without affecting Guarantor's obligations under this Guaranty:

(a)      The Lender may alter any terms of the Loan or any part of it, including renewing, compromising, extending or accelerating, or otherwise changing the time for payment of, or increasing or decreasing the rate of interest on, the Loan or any part of it.

(b)      The Lender may take and hold security for the Loan or this Guaranty, accept additional or substituted security for either, and subordinate, exchange, enforce, waive, release, compromise, fail to perfect and sell or otherwise dispose of any such security.

(c)      The Lender may direct the order and manner of any sale of all or any part of any security now or later to be held for the Loan or this Guaranty, and the Lender may also bid at any such sale.

(d)      The Lender may apply any payments or recoveries from Borrower, Guarantor or any other source, and any proceeds of any security, to Borrower's obligations under the Loan Documents in such manner, order and priority as the Lender may elect, whether or not those obligations are guarantied by this Guaranty or secured at the time of the application.

COMMERCIAL GENERAL GUARANTY      2
Version 2/15/04 - Copyright, Doss & Page, Lawyers

(e)     The Lender may release Borrower of its liability for the Loan or any part of it.

(f)     The Lender may substitute, add or release any one or more guarantors or endorsers.

(g)     In addition to the Loan, the Lender may extend other credit to Borrower, and may take and hold security for the credit so extended, all without affecting Guarantor's liability under this Guaranty.

4.     <u>Guaranty to be Absolute</u>.  Guarantor expressly agrees that until the Obligations are paid and performed in full and each and every term, covenant and condition of this Guaranty is fully performed, Guarantor shall not be released by or because of:

(a)     Any act or event that might otherwise discharge, reduce, limit or modify Guarantor's obligations under this Guaranty;

(b)     Any waiver, extension, modification, forbearance, delay or other act or omission of the Lender, or its failure to proceed promptly or otherwise as against Borrower, Guarantor or any security;

(c)     Any action, omission or circumstance which might increase the likelihood that Guarantor may be called upon to perform under this Guaranty or which might affect the rights or remedies of Guarantor as against Borrower;

(d)     Any dealings occurring at any time between Borrower and the Lender, whether relating to the Loan or otherwise;

(e)     Any lack of validity or enforceability of the Note, the Deed of Trust or any other Loan Document or any other agreement or instrument relating thereto;

(f)     Any action of the Lender described in <u>Paragraph 3</u> above; or

(g)     Any other circumstance which might otherwise constitute a defense available to, or a discharge of, the Borrower, or Guarantor.

Guarantor hereby acknowledges that absent this <u>Paragraph 4</u>, Guarantor might have a defense to the enforcement of this Guaranty as a result of one or more of the foregoing acts, omissions, agreements, waivers or matters.  Guarantor hereby expressly waives and surrenders any defense to any liability under this Guaranty based upon any of such acts, omissions, agreements, waivers or matters.  It is the express intent of Guarantor that Guarantor's obligations under this Guaranty are and shall be absolute, unconditional and irrevocable.

5.     <u>Guarantor's Waivers</u>.  Guarantor waives:

(a)     All statutes of limitations as a defense to any action or proceeding brought against Guarantor by the Lender, to the fullest extent permitted by law;

COMMERCIAL GENERAL GUARANTY                    3
Version 2/15/04 - Copyright, Doss & Page, Lawyers

(b)    Any right it may have to require the Lender to proceed against Borrower, proceed against or exhaust any security held from Borrower, or pursue any other remedy in the Lender's power to pursue;

(c)    Any defense based on any claim that Guarantor's obligations exceed or are more burdensome than those of Borrower;

(d)    Any defense based on: (i) any legal disability of Borrower, (ii) any release, discharge, modification, impairment or limitation of the liability of Borrower to the Lender from any cause, whether consented to by the Lender or arising by operation of law or from any bankruptcy or other voluntary or involuntary proceeding, in or out of court, for the adjustment of debtor-creditor relationships (hereinafter, an **"Insolvency Proceeding"**) and (iii) any rejection or disaffirmance of the Loan, or any part of it, or any security held for it, in any such Insolvency Proceeding;

(e)    Any defense based on any action taken or omitted by the Lender in any Insolvency Proceeding involving Borrower, including any election to have the Lender's claim allowed as being secured, partially secured or unsecured, any extension of credit by the Lender to Borrower in any Insolvency Proceeding, and the taking and holding by the Lender of any security for any such extension of credit;

(f)    All promptness, diligence, presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of acceptance of this Guaranty and of the existence, creation, or incurring of new or additional indebtedness, and demands and notices of every kind;

(g)    Any defense based on or arising out of any defense that Borrower may have to the payment or performance of the Loan or any part of it; and

(h)    Any defense based on or arising out of any action of the Lender described in Paragraphs 3 or 4 above.

6.    Waivers of Subrogation and Other Rights and Defenses.

(a)    Upon a default by Borrower, the Lender in its sole discretion, without prior notice to or consent of Guarantor, may elect to: (i) foreclose either judicially or nonjudicially against any real or personal property security it may hold for the Loan, (ii) accept a transfer of any such security in lieu of foreclosure, (iii) compromise or adjust the Loan or any part of it or make any other accommodation with Borrower or Guarantor, or (iv) exercise any other remedy against Borrower or any security. No such action by the Lender shall release or limit the liability of Guarantor, who shall remain liable under this Guaranty after the action, even if the effect of the action is to deprive Guarantor of any subrogation rights, rights of indemnity, or other rights to collect reimbursement from Borrower for any sums paid to the Lender, whether contractual or arising by operation of law or otherwise. Guarantor expressly agrees that under no

circumstances shall it be deemed to have any right, title, interest or claim in or to any real or personal property to be held by the Lender or any third party after any foreclosure or transfer in lieu of foreclosure of any security for the Loan.

(b)     Regardless of whether Guarantor may have made any payments to the Lender, Guarantor hereby waives: (i) all rights of subrogation, indemnification, contribution, and any other rights to collect reimbursement from Borrower or any other party for any sums paid to the Lender, whether contractual or arising by operation of law (including the United States Bankruptcy Code or any successor or similar statute) or otherwise, (ii) all rights to enforce any remedy that the Lender may have against Borrower, and (iii) all rights to participate in any security now or later to be held by the Lender for the Loan.  The waivers given in this subsection 6(b) shall be effective until the Loan has been paid and performed in full.

(c)     Guarantor understands and acknowledges that if the Lender forecloses judicially or nonjudicially against any real property security for the Loan, that foreclosure could impair or destroy any ability that Guarantor may have to seek reimbursement, contribution or indemnification from Borrower or others based on any right Guarantor may have of subrogation, reimbursement, contribution or indemnification for any amounts paid by Guarantor under this Guaranty. Guarantor further understands and acknowledges that in the absence of this Paragraph 6, such potential impairment or destruction of Guarantor's rights, if any, may entitle Guarantor to assert a defense to this Guaranty based on Section 580d of the California Code of Civil Procedure as interpreted in Union Bank v. Gradsky, 265 Cal.App.2d 40 (1968).  By executing this Guaranty, Guarantor freely, irrevocably and unconditionally: i) waives and relinquishes that defense and agrees that Guarantor will be fully liable under this Guaranty even though the Lender may foreclose judicially or nonjudicially against any real property security for the Loan; ii) agrees that Guarantor will not assert that defense in any action or proceeding which the Lender may commence to enforce this Guaranty; iii) acknowledges and agrees that the rights and defenses waived by Guarantor under this Guaranty include any right or defense that Guarantor may have or be entitled to assert based upon or arising out of any one or more of Sections 580a, 580b, 580d or 726 of the California Code of Civil Procedure or Section 2848 of the California Civil Code; and iv) acknowledges and agrees that the Lender is relying on this waiver in making the Loan, and that this waiver is a material part of the consideration which the Lender is receiving for making the Loan.

INITIALS:_____

(d)     Guarantor waives any rights and defenses that are or may become available to Guarantor by reason of Sections 2787 to 2855, inclusive, and Sections 2899 and 3433, of the California Civil Code.

INITIALS:_____

(e)   Guarantor waives all rights and defenses that Guarantor may have because
Borrower's Loan is secured by real property.  This means, among other things:

    (i)   The Lender may collect from Guarantor without first foreclosing on any
real or personal property collateral pledged by Borrower.

    (ii)   If the Lender forecloses on any real property collateral pledged by
Borrower:

        (A)   The amount of the Loan may be reduced only by the price for
which that collateral is sold at the foreclosure sale, even if the
collateral is worth more than the sale price.

        (B)   The Lender may collect from Guarantor even if the Lender, by
foreclosing on the real property collateral, has destroyed any
right Guarantor may have to collect from Borrower.

This subsection 6(e) is an unconditional and irrevocable waiver of any rights and
defenses Guarantor may have because Borrower's Loan is secured by real
property.  These rights and defenses include, but are not limited to, any rights or
defenses based upon Section 580a, 580b, 580d, or 726 of the California Code of
Civil Procedure.

INITIALS:_____

(f)   Guarantor waives any right or defense it may have at law or equity, including
California Code of Civil Procedure Section 580a, to a fair market value hearing
or action to determine a deficiency judgment after a foreclosure.

INITIALS:_____

(g)   No provision or waiver in this Guaranty shall be construed as limiting the
generality of any other provision or waiver contained in this Guaranty.

7.   Revival and Reinstatement.  If the Lender is required to pay, return or restore to
Borrower or any other person any amounts previously paid on the Loan because of any Insolvency
Proceeding of Borrower, any stop notice or any other reason, the obligations of Guarantor shall be
reinstated and revived and the rights of the Lender shall continue with regard to such amounts, all as
though they had never been paid.

8.   Information Regarding Borrower and the Property.  Before signing this Guaranty,
Guarantor investigated the financial condition and business operations of Borrower, the present and
former condition, uses and ownership of the Property, and such other matters as Guarantor deemed
appropriate to assure itself of Borrower's ability to discharge its obligations under the Loan Documents.
Guarantor assumes full responsibility for that due diligence, as well as for keeping informed of all matters
that may affect Borrower's ability to pay and perform its obligations to the Lender.  The Lender has no
duty to disclose to Guarantor any information which the Lender may have or receive about Borrower's

financial condition or business operations, the condition or uses of the Property, or any other circumstances bearing on Borrower's ability to perform.

9.    Subordination. Any rights of Guarantor, whether now existing or later arising, to receive payment on account of any indebtedness (including interest) owed to it by Borrower or any subsequent owner of the Property, or to withdraw capital invested by it in Borrower, or to receive distributions from Borrower, shall at all times be subordinate as to lien and time of payment and in all other respects to the full and prior repayment to the Lender of the Loan. Guarantor shall not be entitled to enforce or receive payment of any sums hereby subordinated until the Loan has been paid and performed in full and any such sums received in violation of this Guaranty shall be received by Guarantor in trust for the Lender.

10.    Guarantor's Representations and Warranties. Guarantor represents and warrants that:

(a)    All financial statements and other financial information furnished or to be furnished to the Lender are or will be true and correct and do or will fairly represent the financial condition of Guarantor (including all contingent liabilities);

(b)    All financial statements were or will be prepared in accordance with generally accepted accounting principles, or such other accounting principles as may be acceptable to the Lender at the time of their preparation, consistently applied; and

(c)    There has been no material adverse change in the business condition (financial or otherwise), operations, properties or prospects of Guarantor since the dates of the statements most recently furnished to the Lender.

11.    Events of Default. The Lender may declare Guarantor to be in default under this Guaranty upon the occurrence of any of the following events ("Events of Default"):

(a)    Guarantor fails to perform any of its obligations under this Guaranty; or

(b)    Guarantor revokes this Guaranty or this Guaranty becomes ineffective for any reason; or

(c)    Any representation or warranty made or given by Guarantor to the Lender proves to be false or misleading in any material respect; or

(d)    Guarantor becomes insolvent or the subject of any Insolvency Proceeding; or

(e)    Guarantor (or any one of them) dies, and Borrower fails to, within sixty (60) days after such death, to provide the Lender with a replacement guarantor or guarantors acceptable to the Lender in the Lender's reasonable discretion; or

(f)    Guarantor dissolves or liquidates, or any of these events happens to any of Guarantor's general partners, or Guarantor's trustor if Guarantor is a trust; or

(g)     Guarantor's managing general partner or manager, if any as the case may be, ceases for any reason to act in that capacity, or if Guarantor is a trust, the trust is revoked or materially modified; or

(h)     Any material adverse change occurs, or is reasonably likely to occur, in Guarantor's business condition (financial or otherwise), operations, properties or prospects, or ability to perform under this Guaranty.

12.     Authorization; No Violation.  Guarantor is authorized to execute, deliver and perform under this Guaranty, which is a valid and binding obligation of Guarantor.  No provision or obligation of Guarantor contained in this Guaranty violates any applicable law, regulation or ordinance, or any order or ruling of any court or governmental agency.  No such provision or obligation conflicts with, or constitutes a breach or default under, any agreement to which Guarantor is a party.  No consent, approval or authorization of or notice to any person or entity is required in connection with Guarantor's execution of and obligations under this Guaranty.

13.     Additional and Independent Obligations.  Guarantor's obligations under this Guaranty are in addition to its obligations under any other existing or future guaranties, each of which shall remain in full force and effect until it is expressly modified or released in a writing signed by the Lender.  The Guarantor's obligations under this Guaranty are independent of those of Borrower on the Loan.  The Lender may bring a separate action, or commence a separate reference or arbitration proceeding against Guarantor without first proceeding against Borrower, any other person or any security that the Lender may hold, and without pursuing any other remedy.  The Lender's rights under this Guaranty shall not be exhausted by any action by the Lender until the Loan has been paid and performed in full.

14.     No Waiver; Consents; Cumulative Remedies.  Each waiver by the Lender must be in writing, and no waiver shall be construed as a continuing waiver.  No waiver shall be implied from the Lender's delay in exercising or failure to exercise any right or remedy against Borrower, Guarantor or any security.  Consent by the Lender to any act or omission by Borrower or Guarantor shall not be construed as a consent to any other or subsequent act or omission, or as a waiver of the requirement for the Lender's consent to be obtained in any future or other instance.  All remedies of the Lender against Borrower and Guarantor are cumulative.

15.     No Release.  Guarantor shall not be released from its obligations under this Guaranty except by a writing signed by the Lender.

16.     Heirs, Successors and Assigns; Participations.  The terms of this Guaranty shall bind and benefit the heirs, legal representatives, successors and assigns of the Lender and Guarantor; provided, however, that Guarantor may not assign this Guaranty, or assign or delegate any of its rights or obligations under this Guaranty, without the prior written consent of the Lender in each instance.  The Lender in its sole discretion may sell or assign participations or other interests in the Loan and this Guaranty, in whole or in part, all without notice to or the consent of Guarantor and without affecting Guarantor's obligations under this Guaranty.  Also without notice to or the consent of Guarantor, the Lender may disclose any and all information in its possession concerning Guarantor, this Guaranty and any security for this Guaranty to any actual or prospective purchaser of any securities issued or to be issued by the Lender, and to any actual or prospective purchaser or assignee of any participation or other interest in the Loan and this Guaranty.

17.     <u>Notices</u>.  Any notice, demand, statement, request, or consent made hereunder shall be in writing and shall be deemed given when hand delivered or within three (3) days of the date sent by certified mail, return receipt requested, or the next business day after the date sent by nationally recognized overnight mail or courier service to the address, as set forth above, of the party to whom such notice is to be given, or to such other address as Guarantor or the Lender, as the case may be, shall in like manner designate in writing.

18.     <u>Rules of Construction</u>.  In this Guaranty, the word "Borrower" includes both the named Borrower and any other person who at any time assumes or otherwise becomes primarily liable for all or any part of the obligations of the named Borrower on the Loan.  The word "person" includes any individual, company, trust or other legal entity of any kind.  If this Guaranty is executed by more than one person, the word "Guarantor" includes all such persons.  The word "include(s)" means "include(s), without limitation," and the word "including" means "including, but not limited to."  When the context and construction so require, all words used in the singular shall be deemed to have been used in the plural and vice versa.  No listing of specific instances, items or matters in any way limits the scope or generality of any language of this Guaranty.  All headings appearing in this Guaranty are for convenience only and shall be disregarded in construing this Guaranty.

19.     <u>Governing Law</u>.  This Guaranty shall be governed by, and construed in accordance with, the laws of the State of California, without giving effect to the conflict of laws provisions thereof.

20.     <u>Costs and Expenses</u>.  If any lawsuit, reference or arbitration is commenced which arises out of, or which relates to this Guaranty, the Loan Documents or the Loan, the prevailing party shall be entitled to recover from each other party such sums as the court, referee or arbitrator may adjudge to be reasonable attorneys' fees (including allocated costs for services of in-house counsel) in the action or proceeding, in addition to costs and expenses otherwise allowed by law.  In all other situations, including any Insolvency Proceeding, Guarantor agrees to pay all of the Lender's costs and expenses, including attorneys' fees (including allocated costs for services of the Lender's in-house counsel) which may be incurred in any effort to collect or enforce the Loan or any part of it or any term of this Guaranty.  From the time(s) incurred until paid in full to the Lender, all sums shall bear interest at the Default Rate, as defined in the Note.

21.     <u>Consideration</u>.  Guarantor acknowledges that it expects to benefit from the Lender's extension of the Loan to Borrower because of its relationship to Borrower, and that it is executing this Guaranty in consideration of that anticipated benefit.

22.     <u>Continuing Guaranty</u>.  This Guaranty is a continuing Guaranty and shall:

(a)     Remain in full force and effect until payment in full of the Debt and the Obligations and all other amounts payable under this Guaranty;

(b)     Be binding upon the Guarantor, his heirs, legal representatives, successors and assigns; and

(c)     Inure to the benefit of and be enforceable by the Lender and its successors, transferees, and assigns.

All of the indebtedness, liabilities and obligations of the Borrower to the Lender shall be conclusively presumed to have been created in reliance on this Guaranty.

23.    Integration; Modifications. This Guaranty (a) integrates all the terms and conditions mentioned in or incidental to this Guaranty, (b) supersedes all oral negotiations and prior writings with respect to its subject matter, and (c) is intended by Guarantor and the Lender as the final expression of the agreement with respect to the terms and conditions set forth in this Guaranty and as the complete and exclusive statement of the terms agreed to by Guarantor and the Lender. No representation, understanding, promise or condition shall be enforceable against any party hereto unless it is contained in this Guaranty. This Guaranty may not be modified except in a writing signed by both the Lender and Guarantor. No course of prior dealing, usage of trade, parol or extrinsic evidence of any nature shall be used to supplement, modify or vary any of the terms hereof.

24.    Credit Verification. Each legal entity and individual obligated on this Guaranty, whether as a Guarantor, a general partner of a Guarantor or in any other capacity, hereby authorizes the Lender to check any credit references, verify his/her employment and obtain credit reports from credit reporting agencies of the Lender's choice in connection with any monitoring, collection or future transaction concerning the Loan, including any modification, extension or renewal of the Loan. Also in connection with any such monitoring, collection or future transaction, the Lender is hereby authorized to check credit references, verify employment and obtain a third party credit report for the spouse of any married person obligated on this Guaranty, if such person lives in a community property state.

25.    Obligations Joint and Several. If Guarantor consists of more than one individual or entity, the indebtedness, liabilities, and obligations under this Guaranty shall be joint and several. The Obligations of the Guarantor under this Guaranty and those of any other guarantor who may have guaranteed or who later guarantees all or any portion of the Obligations, are and will be joint and several. The Lender may release or settle with one or more Guarantor or any other guarantor at any time without affecting the continuing liability of the remaining individual or entity comprising the Guarantor.

26.    Right of Setoff. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, to the fullest extent permitted by law, to set off and apply any and all deposits (general or special, time or demand, provisional or final) at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Guarantor against any and all of the obligations of the Guarantor now or hereafter existing under this Guaranty, irrespective of whether or not the Lender shall have made any demand under this Guaranty and although such deposits, indebtedness or obligations may be unmatured or contingent. The rights of the Lender under this Section are in addition to other rights and remedies (including, without limitation, other rights of setoff) which the Lender may have.

27.    Consent to Jurisdiction.

(a)    THE GUARANTOR HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF THE FEDERAL DISTRICT AND THE SUPERIOR COURT IN AND FOR THE STATE OF CALIFORNIA, IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY, AND THE GUARANTOR HEREBY IRREVOCABLY AGREES THAT ALL CLAIMS IN RESPECT OF SUCH ACTION OR PROCEEDING MAY BE HEARD AND DETERMINED IN SUCH COURTS. THE GUARANTOR

COMMERCIAL GENERAL GUARANTY                    10
Version 2/15/04 - Copyright, Doss & Page, Lawyers

HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT
GUARANTOR MAY EFFECTIVELY DO SO, THE DEFENSE OF ANY
INCONVENIENT FORUM TO THE MAINTENANCE OF SUCH ACTION
OR PROCEEDING. THE GUARANTOR IRREVOCABLY CONSENTS TO
THE SERVICE OF COPIES OF THE SUMMONS AND COMPLAINT AND
ANY OTHER PROCESS WHICH MAY BE SERVED IN ANY SUCH
ACTION OR PROCEEDING BY THE MAILING OF COPIES OF SUCH
PROCESS TO THE GUARANTOR TO GUARANTOR'S ADDRESSES SET
FORTH ABOVE BY REGISTERED MAIL, RETURN RECEIPT
REQUESTED, AND DEPOSITED IN THE U.S. MAILS. THE GUARANTOR
AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION OR
PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN
OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY
OTHER MANNER PROVIDED BY LAW.

(b)     Nothing in this Section shall affect the right of the Lender to serve legal process
in any other manner permitted by law or affect the right of the Lender to bring
any action or proceeding against the Guarantor or his property in the courts of
any other jurisdictions.

28.     Miscellaneous. The death or legal incapacity of any Guarantor shall not terminate the
obligations of such Guarantor or any other Guarantor under this Guaranty, including its obligations with
regard to future advances under the Loan Documents. The illegality or unenforceability of one or more
provisions of this Guaranty shall not affect any other provision. Any Guarantor who is married agrees
that the Lender may look to all of his or her community property and separate property to satisfy his or
her obligations under this Guaranty. This Guaranty and any attached consents or exhibits requiring
signatures may be executed in counterparts, and all counterparts shall constitute but one and the same
document. Time is of the essence in the performance of this Guaranty by Guarantor.

29.     Counsel: Guarantor acknowledges that Guarantor has had adequate opportunity to
carefully read this Guaranty and to consult with an attorney of Guarantor's choice prior to signing it.

30.     Waiver of Jury Trial. THE GUARANTOR HEREBY IRREVOCABLY WAIVES ALL
RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM ARISING
OUT OF OR RELATING TO THIS GUARANTY.

**IN WITNESS WHEREOF**, the Guarantor has caused this Guaranty to be duly executed and
delivered as of the date first above written.

J.D. Davis AKA Jarrell Darnell Davis, a single
man in an individual capacity

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:5305 Andasol Ave., Encino, CA 91316

A true and correct copy of the foregoing document entitled (*specify*): PROOF OF CLAIM OF BRC COMMERCIAL BRIDGE FUND, LLC AND BELLAIRE COMMERCIAL INVESTMENTS, LLC
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 5/24/23, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Harris L Cohen     hcohen00@aol.com ;  Rod Danielson (TR)     notice-efile@rodan13.com
Benjamin Heston     bhestonecf@gmail.com, benheston@recap.email,NexusBankruptcy@jubileebk.net
United States Trustee (RS)     ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 5/24/23, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor
Tiffani Zelaya
5041 Violas Ct.
Jurupa Valley, CA 91752-5000

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 5/24/23 | HARRIS L. COHEN | |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                          **F 9013-3.1.PROOF SERVICE**
                                                                              Page 55

# EXHIBIT "4"

Fill in this information to identify your case:

United States Bankruptcy Court for the:

**Central District of California**

Case number (*If known*): _____

Chapter you are filing under:
- ☐ Chapter 7
- ☐ Chapter 11
- ☐ Chapter 12
- ☑ Chapter 13

☐ Check if this is an amended filing

## Official Form 101

# Voluntary Petition for Individuals Filing for Bankruptcy

**12/22**

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be *yes* if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1: Identify Yourself

|  | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|
| **1. Your full name**<br><br>Write the name that is on your government-issued picture identification (for example, your driver's license or passport).<br><br>Bring your picture identification to your meeting with the trustee. | **Tiffani**<br>First name<br><br>Middle name<br><br>**Zelaya**<br>Last name<br><br>Suffix (Sr., Jr, II, III) | First name<br><br>Middle name<br><br>Last name<br><br>Suffix (Sr., Jr, II, III) |
| **2. All other names you have used in the last 8 years**<br><br>Include your married or maiden names and any assumed, trade names and *doing business as* names.<br><br>Do NOT list the name of any separate legal entity such as a corporation, partnership, or LLC that is not filing this petition. | First name<br><br>Middle name<br><br>Last name<br><br>Business name (if applicable)<br><br>Business name (if applicable) | First name<br><br>Middle name<br><br>Last name<br><br>Business name (if applicable)<br><br>Business name (if applicable) |
| **3. Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | xxx - xx - <u>0</u> <u>3</u> <u>1</u> <u>4</u><br>OR<br>9xx - xx - ___ ___ ___ ___ | xxx - xx - ___ ___ ___ ___<br>OR<br>9xx - xx - ___ ___ ___ ___ |

Debtor 1    **Tiffani**                          **Zelaya**                    Case number *(if known)* _____
_____
First Name       Middle Name        Last Name

|  | **About Debtor 1:** | **About Debtor 2 (Spouse Only in a Joint Case):** |
|---|---|---|
| **4. Your Employer Identification Number (EIN), if any.** | __ __ - __ __ __ __ __ __ __<br>EIN<br><br>__ __ - __ __ __ __ __ __ __<br>EIN | __ __ - __ __ __ __ __ __ __<br>EIN<br><br>__ __ - __ __ __ __ __ __ __<br>EIN |

**5. Where you live**

| About Debtor 1 | If Debtor 2 lives at a different address: |
|---|---|
| **5041 Violas Ct**<br>Number        Street | _____<br>Number        Street |
| _____ | _____ |
| **Jurupa Valley, CA 91752-5000**<br>City                    State    ZIP Code | _____<br>City                    State    ZIP Code |
| **Riverside**<br>County | _____<br>County |
| **If your mailing address is different from the one above, fill it in here.** Note that the court will send any notices to you at this mailing address. | **If Debtor 2's mailing address is different from yours, fill it in here.** Note that the court will send any notices to you at this mailing address. |
| _____<br>Number        Street | _____<br>Number        Street |
| _____<br>P.O. Box | _____<br>P.O. Box |
| _____<br>City                    State    ZIP Code | _____<br>City                    State    ZIP Code |

**6. Why you are choosing *this district* to file for bankruptcy**

*Check one:*

☑ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason. Explain.
(See 28 U.S.C. § 1408)

_____
_____
_____
_____

*Check one:*

☐ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason. Explain.
(See 28 U.S.C. § 1408)

_____
_____
_____
_____

# EXHIBIT "5"

**Fill in this information to identify your case:**

Debtor 1    **Tiffani**                          **Zelaya**
             First Name    Middle Name    Last Name

Debtor 2
(Spouse, if filing)    First Name    Middle Name    Last Name

United States Bankruptcy Court for the:    **Central District of California**

Case number    **6:23-bk-11933-SY**
(if known)

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition
  chapter 13 income as of the following date:

_____
MM / DD / YYYY

## Official Form 106I

## Schedule I: Your Income                          **12/15**

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1: Describe Employment

| | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| **1.** | **Fill in your employment information.** | | |
| | | **Employment status** ☐ Employed ☑ Not Employed | ☐ Employed ☐ Not Employed |
| | If you have more than one job, attach a separate page with information about additional employers. | **Occupation** _____ | _____ |
| | | **Employer's name** _____ | _____ |
| | Include part time, seasonal, or self-employed work. | **Employer's address** _____ | _____ |
| | | Number Street | Number Street |
| | Occupation may include student or homemaker, if it applies. | _____ | _____ |
| | | _____ | _____ |
| | | City    State    Zip Code | City    State    Zip Code |
| | | **How long employed there?** _____ | _____ |

### Part 2: Give Details About Monthly Income

**Estimate monthly income as of the date you file this form.** If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 2. | **List monthly gross wages, salary, and commissions** (before all payroll deductions.) If not paid monthly, calculate what the monthly wage would be. | 2. ____ $0.00 | ____ $0.00 |
| 3. | **Estimate and list monthly overtime pay.** | 3. + ____ $0.00 | + ____ $0.00 |
| 4. | **Calculate gross income.** Add line 2 + line 3. | 4. ____ $0.00 | ____ $0.00 |

Debtor 1    **Tiffani**                        **Zelaya**                        Case number *(if known)* 6:23-bk-11933-SY
           First Name    Middle Name    Last Name

|  |  | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| | Copy line 4 here............................................................→ **4.** | $0.00 | $0.00 |
| **5.** | List all payroll deductions: | | |
| | 5a. **Tax, Medicare, and Social Security deductions** **5a.** | $0.00 | $0.00 |
| | 5b. **Mandatory contributions for retirement plans** **5b.** | $0.00 | $0.00 |
| | 5c. **Voluntary contributions for retirement plans** **5c.** | $0.00 | $0.00 |
| | 5d. **Required repayments of retirement fund loans** **5d.** | $0.00 | $0.00 |
| | 5e. **Insurance** **5e.** | $0.00 | $0.00 |
| | 5f. **Domestic support obligations** **5f.** | $0.00 | $0.00 |
| | 5g. **Union dues** **5g.** | $0.00 | $0.00 |
| | 5h. **Other deductions.** Specify: _____ **5h.** + | $0.00  + | $0.00 |
| **6.** | **Add the payroll deductions.** Add lines 5a + 5b + 5c + 5d + 5e +5f + 5g + 5h. **6.** | $0.00 | $0.00 |
| **7.** | **Calculate total monthly take-home pay.** Subtract line 6 from line 4. **7.** | $0.00 | $0.00 |
| **8.** | List all other income regularly received: | | |
| | 8a. **Net income from rental property and from operating a business, profession, or farm** | | |
| | Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. **8a.** | $0.00 | $0.00 |
| | 8b. **Interest and dividends** **8b.** | $0.00 | $0.00 |
| | 8c. **Family support payments that you, a non-filing spouse, or a dependent regularly receive** | | |
| | Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. **8c.** | $0.00 | $0.00 |
| | 8d. **Unemployment compensation** **8d.** | $0.00 | $0.00 |
| | 8e. **Social Security** **8e.** | $948.73 | $0.00 |
| | 8f. **Other government assistance that you regularly receive** | | |
| | Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. Specify: _____ **8f.** | $0.00 | $0.00 |
| | 8g. **Pension or retirement income** **8g.** | $0.00 | $0.00 |
| | 8h. **Other monthly income.** Specify: _____ **8h.** + | $0.00  + | $0.00 |
| **9.** | **Add all other income.** Add lines 8a + 8b + 8c + 8d + 8e + 8f +8g + 8h. **9.** | $948.73 | $0.00 |
| **10.** | **Calculate monthly income.** Add line 7 + line 9. Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse **10.** | $948.73  + | $0.00  = | $948.73 |

**11.** State all other regular contributions to the expenses that you list in *Schedule J.*

Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*

Specify: **See additional page** _____    **11.** +    $7,780.00

**12.** **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income. Write that amount on the *Summary of Your Assets and Liabilities and Certain Statistical Information,* if it applies    **12.**    $8,728.73

**Combined monthly income**

**13.** **Do you expect an increase or decrease within the year after you file this form?**
☑ No.
☐ Yes. Explain:

| Debtor 1 | **Tiffani** | | **Zelaya** | Case number *(if known)* 6:23-bk-11933-SY |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

| | Amount |
|---|---|
| 11. **State all other regular contributions to the expenses that you list in *Schedule J*** | |
| Contributions from Daughter (Sabrina) | $3,890.00 |
| Contributions from Daughter (Destiny) | $3,890.00 |

Fill in this information to identify your case:

| | | | |
|---|---|---|---|
| Debtor 1 | **Tiffani** | | **Zelaya** |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the:    **Central District of California**

Case number    **6:23-bk-11933-SY**
(if known)

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13
expenses as of the following date:

_____
MM / DD / YYYY

## Official Form 106J

# Schedule J: Your Expenses

**12/15**

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1: Describe Your Household

**1.  Is this a joint case?**

☑ No. Go to line 2.

☐ Yes. **Does Debtor 2 live in a separate household?**

☐ No

☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household of Debtor 2.*

**2.  Do you have dependents?**

Do not list Debtor 1 and Debtor 2.

Do not state the dependents' names.

☑ No

☐ Yes. Fill out this information for each dependent............

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| _____ | _____ | ☐ No.  ☐ Yes. |
| _____ | _____ | ☐ No.  ☐ Yes. |
| _____ | _____ | ☐ No.  ☐ Yes. |
| _____ | _____ | ☐ No.  ☐ Yes. |
| _____ | _____ | ☐ No.  ☐ Yes. |

**3.  Do your expenses include expenses of people other than yourself and your dependents?**

☑ No

☐ Yes

### Part 2: Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

| | | Your expenses |
|---|---|---|
| 4. | The rental or home ownership expenses for your residence. Include first mortgage payments and any rent for the ground or lot. | 4.  $4,900.00 |
| | **If not included in line 4:** | |
| | 4a. Real estate taxes | 4a.  $0.00 |
| | 4b. Property, homeowner's, or renter's insurance | 4b.  $0.00 |
| | 4c. Home maintenance, repair, and upkeep expenses | 4c.  $80.00 |
| | 4d. Homeowner's association or condominium dues | 4d.  $24.00 |

| Debtor 1 | **Tiffani** | **Zelaya** | Case number *(if known)* 6:23-bk-11933-SY |
|---|---|---|---|
| | First Name | Middle Name | Last Name |

| | | Your expenses |
|---|---|---|

| 5. | **Additional mortgage payments for your residence,** such as home equity loans | 5. | $0.00 |
|---|---|---|---|
| 6. | **Utilities:** | | |
| | 6a. Electricity, heat, natural gas | 6a. | $250.00 |
| | 6b. Water, sewer, garbage collection | 6b. | $100.00 |
| | 6c. Telephone, cell phone, Internet, satellite, and cable services | 6c. | $175.00 |
| | 6d. Other. Specify: _____ | 6d. | $0.00 |
| 7. | **Food and housekeeping supplies** | 7. | $400.00 |
| 8. | **Childcare and children's education costs** | 8. | $0.00 |
| 9. | **Clothing, laundry, and dry cleaning** | 9. | $30.00 |
| 10. | **Personal care products and services** | 10. | $75.00 |
| 11. | **Medical and dental expenses** | 11. | $0.00 |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments. | 12. | $200.00 |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. | $0.00 |
| 14. | **Charitable contributions and religious donations** | 14. | $0.00 |
| 15. | **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20. | | |
| | 15a. Life insurance | 15a. | $0.00 |
| | 15b. Health insurance | 15b. | $0.00 |
| | 15c. Vehicle insurance | 15c. | $369.00 |
| | 15d. Other insurance. Specify: _____ | 15d. | $0.00 |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: _____ | 16. | $0.00 |
| 17. | **Installment or lease payments:** | | |
| | 17a. Car payments for Vehicle 1 | 17a. | $0.00 |
| | 17b. Car payments for Vehicle 2 | 17b. | $0.00 |
| | 17c. Other. Specify: _____ | 17c. | $0.00 |
| | 17d. Other. Specify: _____ | 17d. | $0.00 |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5,** *Schedule I, Your Income* **(Official Form 106I).** | 18. | $0.00 |
| 19. | **Other payments you make to support others who do not live with you.** Specify: _____ | 19. | $0.00 |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on** *Schedule I: Your Income.* | | |
| | 20a. Mortgages on other property | 20a. | $0.00 |
| | 20b. Real estate taxes | 20b. | $0.00 |
| | 20c. Property, homeowner's, or renter's insurance | 20c. | $0.00 |
| | 20d. Maintenance, repair, and upkeep expenses | 20d. | $0.00 |
| | 20e. Homeowner's association or condominium dues | 20e. | $0.00 |

Official Form 106J    Schedule J: Your Expenses    Page 64    page 2

| Debtor 1 | **Tiffani** | | **Zelaya** | | Case number *(if known)* 6:23-bk-11933-SY |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

21. **Other.** Specify: _____    21.  +  _____ $0.00

22. **Calculate your monthly expenses.**

   22a. Add lines 4 through 21.    22a.  _____ $6,603.00

   22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2    22b.  _____ $0.00

   22c. Add line 22a and 22b. The result is your monthly expenses.    22c.  _____ $6,603.00

23. **Calculate your monthly net income.**

   23a. Copy line 12 (your combined monthly income) from *Schedule I.*    23a.  _____ $8,728.73

   23b. Copy your monthly expenses from line 22c above.    23b.  −  _____ $6,603.00

   23c. Subtract your monthly expenses from your monthly income.
   The result is your *monthly net income.*    23c.  _____ $2,125.73

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**

   For example, do you expect to finish paying for your car loan within the year or do you expect your
   mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

   ☑ No.    None
   ☐ Yes.

# EXHIBIT "6"

| Attorney or Party Name, Address, Telephone & FAX Numbers, State Bar Number & Email Address | FOR COURT USE ONLY |
|---|---|
| **NEXUS BANKRUPTCY**<br>Benjamin Heston (297798)<br>100 Bayview Circle #100<br>Newport Beach, CA 92660<br>Tel: 951.290.2827<br>Fax: 949.288.2054<br>ben@nexusbk.com<br><br>☐ *Debtor appearing without attorney*<br>☑ *Attorney for Debtor(s)* | |

<div align="center">

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION**

</div>

| List all names (including trade names) used by Debtor within the last 8 years.<br><br>In re:<br><br>**TIFFANI ZELAYA,**<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Debtor(s). | CASE NUMBER: **6:23-bk-11933-SY**<br><br>CHAPTER 13 |
|---|---|
| | <div align="center">**CHAPTER 13 PLAN**<br><br>☑ Original<br>☐ 1st Amended*<br>☐ 2nd Amended*<br>☐ __ Amended*<br><br>*list below which sections have been changed:<br><br>_____<br><br>[FRBP 3015(b); LBR 3015-1]</div> |
| | **11 U.S.C. SECTION 341(a) CREDITORS' MEETING:**<br>**Date: June 14, 2023**<br>**Time: 9:00 AM**<br>**Address: VIDEO CONFERENCE, GOTO TRUSTEE**<br>       **WEBSITE, FOR INSTRUCTIONS**<br><br>**PLAN CONFIRMATION HEARING: [LBR 3015-1(d)]**<br>**Date: July 25, 2023**<br>**Time: 1:30 PM**<br>**Courtroom: 302**<br>**Address: 3420 Twelfth Street**<br>       **Riverside, CA 92501** |

<div align="center">

*"Bankruptcy Code" and "11 U.S.C." refer to the United States Bankruptcy Code, Title 11 of the United States Code.*
*"FRBP" refers to the Federal Rules of Bankruptcy Procedure. "LBR" and "LBRs" refer to the Local Bankruptcy Rule(s) of this court.*

</div>

## Part 1: PRELIMINARY INFORMATION

**TO DEBTOR (the term "Debtor" includes and refers to both spouses as Debtors in a joint bankruptcy case):** This Chapter 13 Plan (Plan) sets out options that may be appropriate in some cases, but the presence of an option in this Plan does not indicate that the option is appropriate, or permissible, in your situation. A Plan that does not comply with local rules and judicial rulings may not be confirmable. You should read this Plan carefully and discuss it with your attorney if you have one. If you do not have an attorney, you may wish to consult one.

**TO ALL CREDITORS:** This Plan is proposed by Debtor and your rights may be affected by this Plan. Your claim may be reduced, modified, or eliminated. You should read this Plan carefully and discuss it with your attorney if you have one. If you do not have an attorney, you may wish to consult one.

***PLEASE NOTE THAT THE PROVISIONS OF THIS PLAN MAY BE MODIFIED BY ORDER OF THE COURT.***

If you oppose this Plan's treatment of your claim or any provision of this Plan, you or your attorney must file a written objection to confirmation of the Plan at least 14 days before the date set for the hearing on confirmation. However, the amounts listed on a proof of claim for an allowed secured or priority claim control over any contrary amounts listed in the Plan. The Bankruptcy Court may confirm this plan without further notice if no objection to confirmation is filed. *See* FRBP 3015. In addition, you must file a timely proof of claim in order to be paid under any plan. *See* LBR 3015-1 and FRBP 3002(a).

Defaults will be cured using the interest rate set forth below in the Plan.

**The following matters may be of particular importance to you:**

***Debtor must check one box on each line to state whether or not this Plan includes each of the following items. If an item is checked as "Not Included," if both boxes are checked, or neither box is checked, the item will be ineffective if set out later as a provision in this Plan.***

1.1    **Valuation of property and avoidance of a lien on property of the bankruptcy estate, set out in Class 3B and/or Section IV (11 U.S.C. § 506(a) and (d)):**
☐ **Included**    ☒ **Not Included**

1.2    **Avoidance of a judicial lien or nonpossessory, nonpurchase-money security interest, set out in Section IV (11 U.S.C. § 522(f)):**
☐ **Included**    ☒ **Not Included**

1.3    **Less than full payment of a domestic support obligation that has been assigned to a governmental unit, pursuant to 11 U.S.C. §1322(a)(4). This provision requires that payments in Part 2 Section I.A. be for a term of 60 months:**
☐ **Included**    ☒ **Not Included**

1.4    **Other Nonstandard Plan provisions, set out in Section IV:**
☐ **Included**    ☒ **Not Included**

**ALL CREDITORS ARE REQUIRED TO FILE A PROOF OF CLAIM IN ORDER TO HAVE AN ALLOWED CLAIM, EXCEPT AS PROVIDED IN FRBP 3002(a).**  A Debtor whose Plan is confirmed may be eligible thereafter to receive a discharge of debts to the extent specified in 11 U.S.C. § 1328.

Regardless of whether this Plan treats a claim as secured or unsecured, any lien securing such claim is not avoided other than as provided by law or order of the court.

## Part 2: PLAN TERMS

Debtor proposes the following Plan terms and makes the following declarations:

## SECTION I. PLAN PAYMENT AND LENGTH OF PLAN

A. Monthly Plan Payments will begin 30 days from the date the bankruptcy petition was filed. If the payment due date falls on the 28th, 30th, or 31st day of the month, payment is due on the 1st day of the following month (LBR 3015 1(k)(1)(A)).

    Payments by Debtor of:

    **$2,127.00** per month for months **1** through **60** totaling **$127,620.00**

    For a total plan length of **60** months, totaling **$127,620.00**

B. Nonpriority unsecured claims.

    The total amount of estimated non-priority unsecured claims is **$15,500.00**.

    1. Unless otherwise ordered by the court, after Class 1 through Class 4 creditors are paid, allowed nonpriority unsecured claims that are not separately classified (Class 5) will be paid pro rata per the option checked below. If both options below are checked, the option providing the largest payment will be effective.

      a. ☑ **"Percentage" plan: 0%** of the total amount of these claims, for an estimated total payment of **$0.00**.

      b. ☑ **"Residual" plan:** The remaining funds, after disbursements have been made to all other creditors provided for in this Plan, estimated to pay a total of **$0.00** and **0%** to claims in Class 5. The amount distributed to Class 5 claims may be less than the amount specified here depending on the amount of secured and priority claims allowed.

    2. Minimum Plan payments. Regardless of the options checked above, payments on allowed nonpriority unsecured claims will be made in at least the greater of the following amounts:

      a. the sum of **$0.00**, representing the liquidation value of the estate in a hypothetical Chapter 7 case under 11 U.S.C. § 1325(a)(4), or

      b. if Debtor has above-median income and otherwise subject to 11 U.S.C. § 1325(b), the sum of **$0.00**, representing all disposable income payable for 60 months under the means test.

C. Income tax refunds. Debtor will provide the Chapter 13 Trustee with a copy of each income tax return filed during the Plan term within 14 days of filing the return and, unless the Plan provides 100% payment to nonpriority unsecured creditors (Class 5), will turn over to the Chapter 13 Trustee all federal and state income tax refunds received for the term of the plan. The Debtor may retain a total of $500 of the sum of the federal and state tax refunds for each tax year. Income tax refunds received by the debtor and turned over to the Chapter 13 Trustee or directly turned over to the Chapter 13 Trustee by the taxing authorities do not decrease the total amount of payments stated in Section I.A., above. The refunds are pledged to the plan in addition to the amounts stated in Section I.A. and can be used by the Chapter 13 Trustee to increase the percentage paid to general unsecured creditors without further order of the Bankruptcy Court.

D. In the event that secured creditor(s) file a Notice of Postpetition Fees and Costs pursuant to FRBP 3002.1(c), the Chapter 13 Trustee is authorized, but not required, to commence paying those charges 90 days after that notice is filed, unless within that time the Debtor contests those charges by filing a motion to determine payment under FRBP 3002.1(e) or agrees to pay those charges by filing a motion to modify this Plan.

E. Debtor must make preconfirmation adequate protection payments for any creditor that holds an allowed claim secured by personal property where such security interest is attributable to the purchase of such property and preconfirmation payments on leases of personal property whose allowed claim is impaired by the terms proposed in this Plan. Debtor must make preconfirmation adequate protection payments and preconfirmation lease payments to the Chapter 13 Trustee for the following creditor(s) in the following amounts:

| Creditor/Lessor Name | Collateral Description | Last 4 Digits Of Account # | Amount |
|---|---|---|---|
|  |  |  |  |

Each adequate protection payment or preconfirmation lease payment will accrue beginning the 30th day from the date of filing of the case. The Chapter 13 Trustee must deduct the foregoing adequate protection payment(s) and/or preconfirmation lease payment from Debtor's Plan Payment and disburse the adequate protection payment or preconfirmation lease payment to the secured creditor(s) at the next disbursement or as soon as practicable after the payment is received and posted to the Chapter 13 Trustee's account. The Chapter 13 Trustee will collect his or her statutory fee on all receipts made for preconfirmation adequate protection payments or preconfirmation lease payments.

F. Debtor must not incur debt greater than $1,000 without prior court approval unless the debt is incurred in the ordinary course of business pursuant to 11 U.S.C. §1304(b) or for medical emergencies.

G. The Chapter 13 Trustee is authorized to disburse funds after the date Plan confirmation is announced in open court.

H. Debtor must file timely all postpetition tax returns and pay timely all postconfirmation tax liabilities directly to the appropriate taxing authorities.

I. Debtor must pay all amounts required to be paid under a Domestic Support Obligation that first became payable after the date of the filing of the bankruptcy petition.

J. If the Plan proposes to avoid a lien of a creditor, the Chapter 13 Trustee must not disburse any payments to that creditor on that lien until the Plan confirmation order is entered.

K. Debtor must pay all required ongoing property taxes and insurance premiums for all real and personal property that secures claims paid under the Plan.

## Section II. ORDER OF PAYMENT OF CLAIMS; CLASSIFICATION AND TREATMENT OF CLAIMS:

Except as otherwise provided in this Plan, the Chapter 13 Trustee must disburse all available funds for the payment of claims as follows:

## A. ORDER OF PAYMENT OF CLAIMS:

**1st** If there are Domestic Support Obligations, the order of priority will be:

(a) Domestic Support Obligations and the Chapter 13 Trustee's fee not exceeding the amount accrued on Plan Payments made to date;

(b) Administrative expenses (Class 1(a)) until paid in full;

If there are <u>no</u> Domestic Support Obligations, the order of priority will be:

(c) The Chapter 13 Trustee's fee not exceeding the amount accrued on Plan Payments made to date;

(d) Administrative expenses (Class 1(a)) until paid in full.

**2nd** Subject to the 1st paragraph, *pro rata* to all secured claims and all priority unsecured claims until paid in full except as otherwise provided in this Plan.

**3rd** Non-priority unsecured creditors will be paid *pro rata* except as otherwise provided in this Plan. No payment will be made on nonpriority unsecured claims until all the above administrative, secured and priority claims have been paid in full unless otherwise provided in this Plan.

## B. CLASSIFICATION AND TREATMENT OF CLAIMS:

| CLASS 1 | | | |
|---|---|---|---|
| **ALLOWED UNSECURED CLAIMS ENTITLED TO PRIORITY UNDER 11 U.S.C. §507**<br><br>Class 1 claims will be paid in full pro rata. Any treatment that proposes to pay claims in Class 1(a) or 1(b) less than in full must be agreed to in writing by the holder of each such claim and specifically addressed in Section IV.D.<br><br>Unless otherwise ordered by the court, the claim amount stated on a proof of claim, and the dollar amount of any allowed administrative expense, controls over any contrary amount listed below. | | | |
| **CATEGORY** | **AMOUNT OF PRIORITY CLAIM** | **INTEREST RATE, IF ANY** | **TOTAL PAYMENT** |
| **a.  Administrative expenses** | | | |
| (1)  Chapter 13 Trustee's Fee – estimated at 11% of all payments to be made to all classes through this Plan. | | | |
| (2)  Attorney's Fees | **$3,500.00** | | **$3,500.00** |
| (3)  Chapter 7 Trustee's Fees | | | |
| (4)  Other | | | |
| (5)  Other | | | |
| **b.  Other priority claims** | | | |
| (1)  Internal Revenue Service | | | |
| (2)  Franchise Tax Board | | | |
| (3)  Domestic Support Obligation | | | |
| (4)  Other | | | |
| **c.  Domestic Support Obligations that have been assigned to a governmental unit and are not to be paid in full in the Plan pursuant to 11 U.S.C. §1322(a)(4) (this provision requires that payments in Part 2 Section I.A. be for a term of 60 months)**<br><br>*(specify creditor name)* | | | |
| | | | |

☐  See attachment for additional claims in Class 1.

# CLASS 2

### CLAIMS SECURED SOLELY BY PROPERTY THAT IS DEBTOR'S PRINCIPAL RESIDENCE ON WHICH OBLIGATION MATURES AFTER THE FINAL PLAN PAYMENT IS DUE

*Check one.*

☐ **None**. *If "None" is checked, the rest of this form for Class 2 need not be completed.*

☑ Debtor will maintain and make the current contractual installment payments on the secured claims listed below, with any changes required by the applicable contract and noticed in conformity with any applicable rules. Unless otherwise ordered by the court, these payments will be disbursed either by the Chapter 13 Trustee or directly by Debtor, as specified below. Debtor will cure the prepetition arrearages, if any, on a listed claim through disbursements by the Chapter 13 Trustee, with interest, if any, at the rate stated.

The arrearage amount stated on a proof of claim controls over any contrary amount listed below.

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | AMOUNT OF ARREARAGE, IF ANY | INTEREST RATE | ESTIMATED MONTHLY PAYMENT ON ARREARAGE | ESTIMATED TOTAL PAYMENTS | POST-PETITION PAYMENT DISBURSING AGENT |
|---|---|---|---|---|---|---|
| **BRC LOANS** | 5981 | $117,000.00 | 0% | $1,950.00 | $117,000.00 | ☐ Trustee ☑ Debtor |

☐ See attachment for additional claims in Class 2.

# CLASS 3A

### UNIMPAIRED CLAIMS TO BE PAID DIRECTLY BY DEBTOR

*Check one.*

☑ **None.** *If "None" is checked, the rest of this form for Class 3A need not be completed.*

☐ Debtor will make regular payments, including any preconfirmation payments, directly to the following creditors in accordance with the terms of the applicable contract (Include Creditor Name and Last 4 Digits of Account Number):

_____

The claims of these creditors are unimpaired under the plan.

☐ See attachment for additional claims in Class 3A.

| CLASS 3B |
|---|

**CLAIMS SECURED BY REAL OR PERSONAL PROPERTY WHICH ARE TO BE BIFURCATED AND PAID IN FULL DURING THE TERM OF THIS PLAN**

*Check one.*

☑ **None.** *If "None" is checked, the rest of this form for Class 3B need not be completed.*

☐ Debtor proposes:

**Bifurcation of Claims - Dollar amounts/lien avoidance.** Except as provided below regarding bifurcation of claims into a secured part and an unsecured part, the claim amounts listed on a proof of claim control this Plan over any contrary amounts listed below.

(a) Bifurcated claims - secured parts: Debtor proposes that, for the purposes of distributions under this Plan, the dollar amount of secured claims in this Class 3B should be as set forth in the column headed "Secured Claim Amount." For that dollar amount to be binding on the affected parties, either

(i) Debtor must obtain a court order granting a motion fixing the dollar amount of the secured claim and/or avoiding the lien, or

(ii) Debtor must complete and comply with Part 2 Section IV.C., so that the Plan itself serves as such a motion; the "Included" boxes must be checked in Part 1 Paragraphs 1.1 and/or 1.2 (indicating that this Plan includes valuation and lien avoidance, and/or avoidance of a judicial lien or nonpossessory, nonpurchase-money lien in Section IV.C.); and this Plan must be confirmed - if any one of those conditions is not satisfied, then the claim will not be bifurcated into a secured part and an unsecured part pursuant to this sub-paragraph.

(b) Bifurcated claims - unsecured parts: Any allowed claim that exceeds the amount of the secured claim will be treated as a nonpriority unsecured claim in Class 5 below.

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | CLAIM TOTAL | SECURED CLAIM AMOUNT | INTEREST RATE | ESTIMATED MONTHLY PAYMENT | ESTIMATED TOTAL PAYMENT |
|---|---|---|---|---|---|---|
| | | | | | | |

☐ See attachment for additional claims in Class 3B.

| CLASS 3C |
|---|

**CLAIMS SECURED BY REAL OR PERSONAL PROPERTY WHICH ARE TO BE PAID IN FULL DURING THE TERM OF THIS PLAN (WITHOUT BIFURCATION), INCLUDING CURE OF ARREARS, IF APPLICABLE.**

*Check all that apply.*

☑ **None.** *If "None" is checked, the rest of this form for Class 3C need not be completed.*

☐ Debtor proposes to treat the claims listed below as fully secured claims on the terms set forth below. These claims will not be bifurcated. The claim amounts listed on a proof of claim control this Plan over any contrary amounts listed below.

### IMPAIRED CLAIMS PAID THROUGH THE PLAN BY THE TRUSTEE

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | CLAIM TOTAL | INTEREST RATE | ESTIMATED MONTHLY PAYMENT | ESTIMATED TOTAL PAYMENTS |
|---|---|---|---|---|---|
| | | | | | |

### CURE AND MAINTAIN CLAIMS

☐ Debtor will maintain and make the current contractual installment payments (Ongoing Payments) on the secured claims listed below pursuant to the terms of the applicable contract, except as stated otherwise in this Plan. These payments will be disbursed either by the Chapter 13 Trustee or directly by Debtor, as specified below. Debtor will cure and pay the prepetition arrearages, if any, on a claim listed below through disbursements by the Chapter 13 Trustee, with interest, if any, at the rate stated. The dollar amount of arrearage stated on a proof of claim controls over any contrary amount listed below.

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | Cure of Default | | | | ONGOING PAYMENT DISBURSING AGENT |
|---|---|---|---|---|---|---|
| | | AMOUNT OF ARREARAGE, IF ANY | INTEREST RATE | ESTIMATED MONTHLY PAYMENT ON ARREARAGE | ESTIMATED TOTAL PAYMENTS | |
| | | | | | | ☐ Trustee<br>☐ Debtor |

☐ See attachment for additional claims in Class 3C.

## CLASS 3D

### SECURED CLAIMS EXCLUDED FROM 11 U.S.C. §506

*Check one.*

☑ **None.** *If "None" is checked, the rest of this form for Class 3D need not be completed.*

☐ The claims listed below were either:

1. Incurred within 910 days before the petition date and secured by a purchase money security interest in a motor vehicle acquired for the personal use of Debtor, or

2. Incurred within 1 year of the petition and secured by a purchase money security interest in any other thing of value.

These claims will be paid in full under this Plan with interest at the rate stated below. The claim amount stated on a proof of claim controls over any contrary amount listed below.

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | CLAIM TOTAL | INTEREST RATE | ESTIMATED MONTHLY PAYMENT | ESTIMATED TOTAL PAYMENTS |
|---|---|---|---|---|---|
| | | | | | |

☐ See attachment for additional claims in Class 3D.

## CLASS 4

### OTHER CLAIMS ON WHICH THE LAST PAYMENT ON A CLAIM IS DUE AFTER THE DATE ON WHICH THE FINAL PLAN PAYMENT IS DUE, WHICH ARE PROVIDED FOR UNDER 11 U.S.C. §1322(b)(5)

*Check one.*

☑ **None.** *If "None" is checked, the rest of this form for Class 4 need not be completed.*

☐ Debtor will maintain and make the current contractual installment payments (Ongoing Payments) on the secured claims listed below pursuant to the terms of the applicable contract, except as stated otherwise in this Plan. These payments will be disbursed either by the Chapter 13 Trustee or directly by Debtor, as specified below. Debtor will cure and pay the prepetition arrearages, if any, on a claim listed below through disbursements by the Chapter 13 Trustee, with interest, if any, at the rate stated. The dollar amount of arrearage stated on a proof of claim controls over any contrary amount listed below.

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | CURE OF DEFAULT | | | | ONGOING PAYMENT DISBURSING AGENT |
|---|---|---|---|---|---|---|
| | | AMOUNT OF ARREARAGE, IF ANY | INTEREST RATE | ESTIMATED MONTHLY PAYMENT ON ARREARAGE | ESTIMATED TOTAL PAYMENTS | |
| | | | | | | |

☐ See attachment for additional claims in Class 4.

| CLASS 5A |
| --- |
| **NON-PRIORITY UNSECURED CLAIMS NOT SEPARATELY CLASSIFIED** |
| Allowed non-priority unsecured claims not separately classified must be paid pursuant to Section I.B. above. |

## SEPARATE CLASSIFICATION:

***Check all that apply if Debtor proposes any separate classification of non-priority unsecured claims.***

☑ **None.** *If "None" is checked, the rest of this form for Class 4 need not be completed.*

| CLASS 5B | | | | |
| --- | --- | --- | --- | --- |
| ☐  **Maintenance of payments.** Debtor will maintain and make the contractual installment payments on the unsecured claims listed below on which the last payment is due after the final Plan payment. The contractual installment payments will be disbursed by Debtor. | | | | |
| **NAME OF CREDITOR** | **LAST 4 DIGITS OF ACCOUNT NUMBER** | **INTEREST RATE** | **ESTIMATED MONTHLY PAYMENT** | **ESTIMATED TOTAL PAYMENTS** |
|  |  |  |  |  |

| CLASS 5C | | | | |
| --- | --- | --- | --- | --- |
| ☐  **Other separately classified non-priority unsecured claims.** | | | | |
| **NAME OF CREDITOR** | **LAST 4 DIGITS OF ACCOUNT NUMBER** | **AMOUNT TO BE PAID ON THE CLAIM** | **ESTIMATED MONTHLY PAYMENT** | **ESTIMATED TOTAL PAYMENTS** |
|  |  |  |  |  |

☐ See attachment for additional claims in Class 5.

Page 76

## CLASS 6

### SURRENDER OF COLLATERAL

*Check one.*

☑ **None.** *If "None" is checked, the rest of this form for Class 6 need not be completed.*

☐ Debtor elects to surrender to each creditor listed below the collateral that secures the creditor's claim. Debtor requests that upon confirmation of the Plan the stay under 11 U.S.C. § 362(a) be terminated as to the collateral only and that the stay under 11 U.S.C. §1301 be terminated in all respects. Any allowed unsecured claim resulting from the disposition of the collateral will be treated in Class 5 above.

| CREDITOR NAME | DESCRIPTION |
|---|---|
|  |  |

☐ See attachment for additional claims in Class 6.

## CLASS 7

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Any executory contracts or unexpired leases not listed below are deemed rejected.

*Check one.*

☑ **None.** *If "None" is checked, the rest of this form for Class 7 need not be completed.*

☐ The executory contracts and unexpired leases listed below are treated as specified (*identify the contract or lease at issue and the other party(ies) to the contract or lease*):

Creditor name: _____
Description: _____

   ☐ **Rejected**   ☐ **Assumed; cure amount (if any): $_____,
               to be paid over _____ months**

Creditor name: _____
Description: _____

   ☐ **Rejected**   ☐ **Assumed; cure amount (if any): $_____,
               to be paid over _____ months**

**Payments to be cured within ___ months of filing the bankruptcy petition. All cure payments will be made through disbursements by the Chapter 13 Trustee.**

☐ See attachment for additional claims in Class 7.

## Section III. PLAN SUMMARY

| | |
|---|---:|
| **CLASS 1a** | **$3,500.00** |
| **CLASS 1b** | **$0.00** |
| **CLASS 1c** | **$0.00** |
| **CLASS 2** | **$117,000.00** |
| **CLASS 3B** | **$0.00** |
| **CLASS 3C** | **$0.00** |
| **CLASS 3D** | **$0.00** |
| **CLASS 4** | **$0.00** |
| **CLASS 5A** | **$0.00** |
| **CLASS 5C** | **$0.00** |
| **CLASS 7** | **$0.00** |
| **SUB-TOTAL** | **$120,500.00** |
| **CHAPTER 13 TRUSTEE'S FEE** (Estimated 11% unless advised otherwise) | **$7,120.00** |
| **TOTAL PAYMENT** | **$127,620.00** |

## Section IV.  NON-STANDARD PLAN PROVISIONS

☑  **None.**  *If "None" is checked, the rest of Section IV need not be completed.*

**Pursuant to FRBP 3015(c), Debtor must set forth all nonstandard Plan provisions in this Plan in this separate Section IV of this Plan and must check off the "Included" box or boxes in Paragraphs 1.1, 1.2, 1.3 and/or 1.4 of Part 1 of this Plan. Any nonstandard Plan provision that does not comply with these requirements is  <u>ineffective</u> .** A nonstandard Plan provision means any Plan provision not otherwise included in this mandatory Chapter 13 Plan form, or any Plan provision deviating from this form.

**The nonstandard Plan provisions seeking modification of liens and security interests address only those liens and security interests known to Debtor, and known to be subject to avoidance, and all rights are reserved as to any matters not currently known to Debtor.**

☐  A.  Debtor's Intent to File Separate Motion to Value Property Subject to Creditor's Lien or Avoid Creditor's Lien [11 U.S.C. § 506(a) and (d)]. Debtor will file motion(s) to value real or personal property of the bankruptcy estate and/or to avoid a lien pursuant to 11 U.S.C § 506(a) and (d), as specified in **Attachment A**.

☐  B.  Debtor's Intent to File Separate Motion to Avoid Creditor's Judicial Lien or Nonpossessory, Nonpurchase Security Interest [11 U.S.C. § 522(f)]. Debtor will file a Motion to avoid a judicial lien or nonpossessory, nonpurchase-money security interest, on real or personal property of the bankruptcy estate listed below pursuant to 11 U.S.C § 522(f). If the court enters an order avoiding a lien under 11 U.S.C. § 522(f), the Chapter 13 Trustee will not pay any claim filed based on that lien as a secured claim.

**Name of Creditor Lienholder/Servicer:** _____

**Description of lien and collateral (*e.g.*, 2nd lien on 123 Main St.):** _____

_____

☐  See attachment for any additional liens and security interests to be avoided by separate 11 U.S.C. § 522(f) motion.

Page 78

☐  C.  <u>Debtor's Request in this Plan to Modify Creditor's Secured Claim and Lien.</u> Debtor proposes to modify the following secured claims and liens in this Plan <u>without</u> a separate motion or adversary proceeding - this Plan will serve as the motion to value the collateral and/or avoid the liens as proposed below. **To use this option, Debtor must serve this Plan, LBR Form F 3015-1.02.NOTICE.341.LIEN.CONFRM and all related exhibits as instructed in that form. Note: Not all Judges will grant motions to value and/or avoid liens through this Plan. Please consult the specific Judge's Instructions/Procedures on the court's website for more information.**

---

### DEBTOR'S REQUEST TO MODIFY CREDITOR'S SECURED CLAIM AND LIEN

**TO CREDITOR LIENHOLDER/SERVICER:** _____

_____

☐  Real property collateral (street address and/or legal description or document recording number, including county of recording): _____

(*attach page with legal description of property or document recording number as appropriate*).

☐  Other collateral (*add description such as judgment date, date and place of lien recording, book and page number*). _____

☐  11 U.S.C. § 522(f) – Debtor seeks avoidance of your lien(s) on the above described collateral effective immediately upon issuance of the order confirming this Plan.

☐  11 U.S.C. § 506(a) and (d) – Debtor seeks avoidance of your lien(s) on the above described collateral that will be effective upon the earliest to occur of either payment of the underlying debt determined under non-bankruptcy law or one of the following:

(*check all that apply and see LBR Form F 4003-2.4.ORDER.AFTERDISCH*):

☐  (1) discharge under 11 U.S.C. § 1328, or

☐  (2) Upon completion of all Plan payments.

Value of collateral: ………………………………………………………………….$_____
Liens reducing equity (to which subject lien can attach):

   $_____  + $_____  + $_____  = $_____)

Exemption (only applicable for lien avoidance under 11 U.S.C. § 522(f)): ……………… ($_____)

**Wherefore, Debtor requests that this court issue an order granting the foregoing property valuation and/or lien avoidance of the above-listed creditor on the above-described collateral in the form Attachment B, C and/or D to this Plan, as applicable. (*Debtor must use and attach a separate Attachment B, C and/or D which are also mandatory court forms for modification of each secured claim and lien.*)**

Amount of remaining secured claim (negative results should be listed as $-0-): ……….. $_____

*Note:* See other parts of this Plan for the proposed treatment of any remaining secured claim (generally Class 3).

---

☐ See attachment(s) for additional request(s) to modify secured claims and liens by this Plan.

Page 79

☐ **D. Other Non-Standard Plan Provisions (use attachment, if necessary):**

## SECTION V. REVESTING OF PROPERTY

Property of the bankruptcy estate will not revest in Debtor until a discharge is granted or the case is dismissed or closed without discharge. Revesting will be subject to all liens and encumbrances in existence when the case was filed, except those liens avoided by court order or extinguished by operation of law. In the event the case is converted to a case under Chapter 7, 11, or 12 of the Bankruptcy Code, the property of the estate will vest in accordance with applicable law. After confirmation of this Plan, the Chapter 13 Trustee will not have any further authority or fiduciary duty regarding use, sale, or refinance of property of the estate except to respond to any motion for proposed use, sale, or refinance as required by the LBRs. Prior to any discharge or dismissal, Debtor must seek approval of the court to purchase, sell, or refinance real property.

**By filing this document, the Attorney for Debtor, or Debtor if not represented by an attorney, also certify(ies) that the wording and order of the provisions in this Plan are identical to those contained in the Central District of California Chapter 13 Plan other than any nonstandard Plan provisions included in Section IV.**

Date:    **5/22/2023**                                   **/s/Benjamin Heston**
                                                        BENJAMIN HESTON
                                                        **Attorney for Debtor**


                                                        TIFFANI ZELAYA
                                                        **Debtor 1**

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

April 2019                              Page 14                    F 3015-1.01.CHAPTER13.PLAN

# ATTACHMENT A to Chapter 13 Plan/Confirmation Order
## (11 U.S.C. §§ 506: valuation/lien avoidance by separate motion(s))

☑ **None.** *If "None" is checked, the rest of this Attachment A need not be completed.*

1. **Creditor Lienholder/Servicer:** _____
    **Subject Lien** (*e.g.*, 2nd lien on 123 Main St.): _____
    _____

2. **Creditor Lienholder/Servicer:** _____
    **Subject Lien** (*e.g.*, 3rd lien on 123 Main St.): _____
    _____

3. **Creditor Lienholder/Servicer:** _____
    **Subject Lien** (*e.g.*, 4th lien on 123 Main St.): _____
    _____

4. **Creditor Lienholder/Servicer:** _____
    **Subject Lien** (*e.g.*, 2nd lien on 456 Broadway): _____
    _____

5. **Creditor Lienholder/Servicer:** _____
    **Subject Lien** (*e.g.*, 3rd lien on 456 Broadway): _____
    _____

6. **Creditor Lienholder/Servicer:** _____
    **Subject Lien** (*e.g.*, 4th lien on 456 Broadway): _____
    _____

7. **Creditor Lienholder/Servicer:** _____
    **Subject Lien** (*e.g.*, 2nd lien on 789 Crest Ave.): _____
    _____

8. **Creditor Lienholder/Servicer:** _____
    **Subject Lien** (*e.g.*, 3rd lien on 789 Crest Ave.): _____
    _____

9. **Creditor Lienholder/Servicer:** _____
    **Subject Lien** (*e.g.*, 4th lien on 789 Crest Ave.): _____
    _____

(Attach additional pages for more liens/provisions.)

**CERTIFICATION**: I have prepared this attachment (including any additional pages) for use by the Chapter 13 Trustee. I certify under penalty of perjury under the laws of the United States of America that the information provided in this attachment is accurate to the best of my knowledge after reasonable inquiry, and I acknowledge that the Chapter 13 Trustee has no duty to verify the accuracy of that information.

Executed on *(date)*: _____**5/22/2023**_____

*Printed name*: _____**Benjamin Heston**_____     *Signature*: _____**/s/ Benjamin Heston**_____

☑ Attorney for debtor or   ☐ Debtor appearing without attorney

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:5305 Andasol Ave., Encino, CA 91316

A true and correct copy of the foregoing document entitled (*specify*): **BRC COMMERCIAL BRIDGE FUND, LLC'S AND BELLAIRE COMMERCIAL INVESTMENTS, LLC'S OBJECTION TO CONFIRMATION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF GEORGE LINTZ** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 7/12/23, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Harris L Cohen     hcohen00@aol.com ;  Rod Danielson (TR)     notice-efile@rodan13.com
Benjamin Heston     bhestonecf@gmail.com, benheston@recap.email,NexusBankruptcy@jubileebk.net
United States Trustee (RS)     ustpregion16.rs.ecf@usdoj.gov

☐Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 7/12/23, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor
Tiffani Zelaya
5041 Violas Ct.
Jurupa Valley, CA 91752-5000
Judge's copy to be served after filing confirmed

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 7/12/23 | HARRIS L. COHEN | |
| *Date* | *Printed Name* | *Signature* |